[Crim. No. 19652. Apr. 15, 1977.]

In re RONALD E., a Minor, on Habeas Corpus.

Counsel

Appellate Defenders, Inc., under appointment by the Court of Appeal, and J. Perry Langford for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and John W. Carney, Deputy Attorneys General, for Respondent.

Opinion

WRIGHT, J.*—Ronald E., a juvenile, asserts as grounds for issuance of a writ of habeas corpus that he is unlawfully detained by the Youth Authority. He contends that because he was not properly advised of particular constitutional rights when he admitted the truth of allegations of misconduct contained in multiple petitions pursuant to the Juvenile Court Law (see Welf. & Inst. Code, §§ 602, 777), juvenile court orders which have resulted in his continuing detention by the Youth Authority are constitutionally defective. Petitioner additionally contends that no waiver of such rights may be implied under such circumstances. (See *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) He also complains of the denial of procedural rights in the revocation of his parole from the Youth Authority.[1] For reasons hereinafter set forth we conclude that petitioner is entitled to no relief.

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

[1] Unless otherwise specified all statutory references are to sections of the Welfare and Institutions Code.

Ronald has a long history of juvenile violations pertinent to these proceedings. A petition pursuant to section 602 was first filed in 1971 alleging that he had engaged in conduct described by Penal Code section 459 (burglary). He stipulated to wardship and was detained in juvenile hall until his release in 1972. In that year he was charged in a supplemental petition (§ 777) with a second, similar offense. He admitted the truth of the allegations and was returned to and later released from juvenile hall. A second supplemental petition filed the following year charged that Ronald had unlawfully taken an automobile. (See Veh. Code, § 10851.) Once again he admitted the truth of the allegations and was returned to and later released from juvenile hall.

A third supplemental petition again charging misconduct described by Penal Code section 459 was filed in 1974. After the petition had been amended to allege only the commission of an act described by Penal Code section 496 (receiving stolen property), petitioner admitted the truth of the allegations. He was committed to the Youth Authority and subsequently was paroled. It is this particular admission, allegedly extracted without proper admonishments of petitioner's constitutional rights, that has resulted in his present confinement. Petitioner has, however, been subjected to

### *Noncompliance with* Boykin-Tahl *Requirements*

Petitioner contends that he was not advised of his *Boykin-Tahl* rights at any of the jurisdictional hearings on the initial and the first three supplemental petitions (see fn. 1) alleging misconduct pursuant to the Juvenile Court Law. In dealing with the protections of such rights we stated in *In re Tahl, supra,* 1 Cal.3d 122: ". . . [T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (*Id.,* at p. 132.) *Tahl,* of course, was in response to the compulsion of *Boykin* v. *Alabama, supra,* 395 U.S. 238, which held that a guilty plea must be deemed as involuntarily entered if the accused was unaware of particular constitutional rights waived by such a plea: "First, . . . the privilege against compulsory self-incrimination . . . . Second, . . . the right to trial by jury . . . . Third, . . . the right to confront one's accusers . . . ." (*Id.,* at pp. 243-244 [23 L.Ed.2d at p. 279].) Our statement in *Tahl,* however, requires that the record demonstrate, in addition to evidence of an informed waiver of the three specified constitutional rights, that the accused who admits his guilt was also aware "of the nature of the charge and the consequences of his plea." But in *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473] we cast some doubt on the scope of our holding in *Tahl* when we indicated that a record need establish an informed waiver of only the three constitutional rights in order to overcome a claim that a plea was involuntarily entered under *Boykin.* (*Id.,* at p. 926, fn. 10; see *People* v. *Guerra* (1971) 21 Cal.App.3d 534, 538-539 [98 Cal.Rptr. 627].)

Finally, in *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561], we noted that the admonishments with respect to the privilege against self-incrimination and the rights to a jury trial and to confront witnesses were constitutionally compelled, as distinguished from the

proceedings subsequent to such initial commitment to the Youth Authority. While on parole therefrom in April 1975 he was again charged with unlawfully taking a vehicle and with resisting arrest (Pen. Code, § 148) in a fourth supplemental petition. The juvenile court found that the allegations of the petition were true but made no dispositional order. Parole was revoked by the Youth Authority, however. Petitioner's purported appeal directed to the juvenile court's proceedings was dismissed because the juvenile court had made no appealable order. (In' re Ronald E. (1975) 4 Civ. 14520.) Petitioner was again paroled in 1975 and that parole was also revoked by the Youth Authority later in 1975 after the juvenile court found to be true allegations of a fifth supplemental petition charging misconduct described by Penal Code section 459. Again the court had made no dispositional order in proceedings before it.

We have been informed that petitioner has been restored to parole as of the present time.

admonishments with respect to the other rights mentioned in *Tahl.* We announced a judicially declared rule of criminal procedure requiring a court to admonish an accused as to the consequences of an admission which may subject him to severe sanctions.[2] Unlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused. (*Id.,* at p. 864.)

■ The *Boykin-Tahl* protections afforded an accused, other than the right of trial by jury, are available to juveniles charged pursuant to the Juvenile Court Law, as proceedings thereunder may result in a substantial deprivation of liberty analogous to incarceration for crime. (See *In re Mary B.* (1971) 20 Cal.App.3d 816, 820 [98 Cal.Rptr. 178].) ■ The absence of a knowledgeable waiver of constitutional rights before entering a guilty plea or, in the case of juvenile court proceedings, the admission of jurisdictional facts constitutes grounds for relief on habeas corpus. (See *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857].)

■ The People concede that at the initial jurisdictional hearing in 1971 there was no compliance with *Boykin-Tahl* requirements. We are of the view, however, that petitioner is no longer entitled to raise on petition for the writ of habeas corpus the issue of improprieties in proceedings resulting in detention which he has accepted without timely challenge. We can only assume that petitioner was not unduly distressed

---

[2] *Yurko* involved the admission of the truth of allegations of alleged prior convictions. Because an accused is entitled to the full panoply of constitutional rights on a trial of the fact of an alleged prior conviction, an admission of such fact constitutes a waiver of the pertinent constitutional rights. We held that an accused is thus entitled to the same *Boykin-Tahl* admonitions in waiving his constitutional rights. (*In re Yurko, supra,* 10 Cal.3d 857, 863.) We further acknowledged that he was entitled to be admonished as to the consequences of his admission, and announced the judicially declared rule to such effect. (*Id.,* at p. 864.)

Our most recent statement of the pertinent rule is as follows: "[A]lthough some of our requirements are not constitutionally compelled, we have concluded that effective upon the date on which this opinion becomes final, in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. It shall also demonstrate that he understands the nature of the charges. Express waivers of the enumerated constitutional rights shall appear . . . . In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction . . . ." (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].)

by detentions in juvenile hall, in foster homes and in parental custody and that he elected to waive any constitutional defect in such detentions. Petitioner, moreover, fails to explain his neglect to challenge promptly the validity of any of such commitments, the last of which was ordered in 1973 approximately four years after *Boykin.* He does not assert, for instance, that his failure to challenge such claimed improprieties was predicated on a lack of knowledge of his constitutional rights at a time when he might have made a timely challenge. Petitioner cannot now resort to habeas corpus proceedings as a substitute for his failure to take expeditious appeals, absent special circumstances constituting an excuse for such failure. (*In re Walker* (1974) 10 Cal.3d 764, 773 [112 Cal.Rptr. 177, 518 P.2d 1129].) In view of such lack of diligence on petitioner's part we conclude that he has waived the constitutional defects he now claims in the initial wardship proceedings and proceedings pursuant to the first and second supplemental petitions. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].)

Petitioner did not seek to challenge his detention on constitutional grounds until revocation of parole after the jurisdictional hearing on the fourth supplemental petition. At that time he raised *Boykin-Tahl* issues arising out of the jurisdictional hearing on the third supplemental petition at which he had admitted the truth of allegations that he had unlawfully received stolen property. ■ ■■■ Although the remedy selected by petitioner was procedurally defective and the issue thus was not properly presented until the filing of the instant petition, we conclude that if petitioner is entitled to relief for failure of the juvenile court to properly advise him of *Boykin-Tahl* rights prior to his admission of the truth of allegations contained in the third supplemental petition, that relief should not be denied him for want of diligence.[3]

---

[3]Petitioner urges his contentions in these proceedings by reference to and incorporation of his appellate briefs filed in In re Ronald E., *supra,* 4 Civ. 14520. Although we have considered the incorporated materials in this instance we disapprove of such practice and do not deem that we are bound to so accommodate a party.

There is a further matter which deserves comment. Even if we assume, as we have for purposes of these proceedings, that the incorporated materials may be considered as a part of the application for the writ, it nevertheless appears for reasons which follow that the application fails to allege a prima facie case for *Boykin-Tahl* relief on collateral attack.

This matter came to us on petition for hearing after the Court of Appeal, Fourth Appellate District, had issued its order to show cause in response to petitioner's application for the writ and after that court had filed its opinion ordering the writ to issue. Petitioner had alleged two grounds for issuance of the writ, the same being (1) the impropriety of procedures for revocation of his Youth Authority parole, and (2) the denial of *Boykin-Tahl* rights in proceedings resulting in his initial commitment to the Youth Authority. We have no quarrel with the sufficiency of allegations stating a prima facie case for issuance of the writ on the first ground. The allegations in support of the

The allegations of the third supplemental petition, the truth of which was admitted by petitioner, recite that he "did wilfully and unlawfully receive certain property, to wit, one twelve gauge shotgun, Savage Model 720, serial number 99436, two pairs opal earrings, one opal ring, one opal necklace, which said property had been stolen knowing that said property had been stolen and did conceal and withhold and aid in concealing and withholding said property from the owner, knowing that said property had been stolen; thereby violating section 496 of the Penal Code." Petitioner's counsel indicated that he had discussed the petition with his client. The court advised petitioner that "under the law you don't have to say anything you can remain silent" and that he had the "right to cross-examine" witnesses.[4] Petitioner expressly acknowledged that he surrendered such rights in admitting the allegations of the petition.

It appears from the foregoing that petitioner was expressly advised of the specific constitutional rights which he would be deemed to waive when he admitted the truth of the allegations of the third supplemental

second ground, however, are insufficient because there is absolutely no showing in the application or in the incorporated materials that petitioner was unaware of the claimed denial of *Boykin-Tahl* rights at a time when he might have sought appellate review and relief from such denials. Habeas corpus does not afford a collateral avenue for review of a denial of *Boykin-Tahl* rights when the party offended thereby knowingly elects not to seek review through appellate channels then available to him. (See *In re Walker, supra,* 10 Cal.3d 764, 773.) Here petitioner might have sought such review of and relief from *Boykin-Tahl* denials, if any, after proceedings pursuant to the third supplemental petition. In making his later application for collateral relief he had the burden of demonstrating the existence of all elements of a prima facie case (*In re Swain, supra,* 34 Cal.2d 300) but he failed to allege a fact essential to his right to such relief—the absence of a knowledgeable waiver of rights afforded by *Boykin-Tahl* when he elected not to seek appellate review.

We note that the insufficiency of the petition is a different matter from our rejection of petitioner's right to challenge on *Boykin-Tahl* grounds the initial wardship and other proceedings pursuant to the first two supplemental petitions, which have been dealt with in the text above. Petitioner failed in those instances because he did not exercise diligence in *seeking* relief. But even if we assume, as we have, that he exercised diligence in seeking relief after proceedings pursuant to the third supplemental petition, he nevertheless failed to allege in his application for the writ a prima facie case because he did not claim that he was unaware at a time when he could have sought appellate review, of the denial of *Boykin-Tahl* rights in proceedings pursuant to the third supplemental petition.

In view of the deficiency in petitioner's application the *Boykin-Tahl* issue was not properly joined. (See *In re Saunders* (1970) 2 Cal.3d 1033, 1047-1048 [88 Cal.Rptr. 633, 472 P.2d 921].) Although the application could thus have been or even now be summarily denied as to the *Boykin-Tahl* matters, we elect to proceed to the substantive issues.

[4]The third constitutional right of which a criminally accused is required to be advised—the right to trial by jury—is not a right guaranteed in juvenile court proceedings. (See *In re Michael M.* (1970) 11 Cal.App.3d 741, 744 [96 Cal.Rptr. 887].)

petition. Although there appears to have been no express advice as to the nature of the charge or the consequences of the plea, the record need only "demonstrate" that petitioner understood the nature of the charge in order to foreclose any relief based on a claim that he was not expressly advised thereof. (See *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 605.) Here the specific conduct alleged to constitute the elements of the offense charged is set out in detail in the petition. Petitioner is charged with "wilfully and unlawfully" receiving items of personal property, each of which is particularly described. It is further alleged that such items of personal property had been stolen; that petitioner knew that they had been stolen; that he concealed and withheld and aided in concealing and withholding such property from the owner, knowing that it had been stolen; and that he had "thereby" violated section 496 of the Penal Code.[5] The record reflects that petitioner's attorney had discussed the charges with petitioner.

■ We conclude that the *Boykin-Tahl* requirement that an accused be advised of the nature of the charges against him is satisfied if, as in this case, the record demonstrates that the accused had fair notice of what he was being asked to admit.[6] The record fairly demonstrates that petitioner knowingly admitted to having engaged in a detailed course of conduct which constituted a violation of Penal Code section 496. Although the technical elements of that offense were not explained to petitioner, there is no compulsion which requires such explanation[7] and

---

[5]Penal Code section 496 provides in pertinent part: "Every person who . . . receives any property which has been stolen . . . , knowing the property to be so stolen . . . , or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the property to be so stolen . . . , is punishable in a state prison . . . ."

Although a violation of section 496 may be charged as a misdemeanor if the information or indictment alleges that the value of the property received is less than $200, no such allegation was made in the third supplemental petition. Petitioner was thus not entitled to a limited term of confinement in a Youth Authority facility, as provided in *People* v. *Olivas* (1976) 17 Cal.3d 236, 257 [131 Cal.Rptr. 55, 551 P.2d 375].

[6]The United States Supreme Court, in rejecting a prosecutor's lament that a requirement that an accused be advised of the nature of the charge would foster countless attacks on judgments entered on pleas of guilty, stated: "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (*Henderson* v. *Morgan* (1976) 426 U.S. 637, 647 [49 L.Ed.2d 108, 115-116, 96 S.Ct. 2253, 2258].)

[7]The Supreme Court in *Henderson* also stated: "There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume that it does not." (*Henderson* v. *Morgan, supra,* 426 U.S. 637, 647, fn. 18; see also *Sappington* v. *United States* (8th Cir. 1975) 523

we can discern no persuasive reason for burdening the court with such a requirement.

■ We have yet to consider the question whether petitioner was sufficiently apprised of the consequences of his admission of the truth of the allegations of the third supplemental petition. The record is silent as to such an admonishment and it does not otherwise appear that petitioner was aware thereof. ■ ■■■ We conclude, accordingly, that petitioner's admission of the truth of the allegations of the third supplemental petition was entered without compliance with such *Boykin-Tahl* requirement.[8] As we noted in *Yurko,* however, that requirement is not constitutionally compelled. ■ Although it was thus error for the juvenile court to accept the admission, it will be set aside only if the error is deemed to be prejudicial to petitioner. We conclude for the reasons which follow that no prejudice resulted in the circumstances of this case.

The determinative question on the issue of prejudice is as follows: Is it reasonably probable that petitioner might not have been committed to the Youth Authority had the court advised him, prior to his admission of the truth of the allegations, that he might be so committed? (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We do not know, of course, whether petitioner would or would not have admitted the truth of the allegations if he had been advised of the consequences of his admission. We deem it significant, however, that petitioner provides us

---

F.2d 858, 860 [rule 11 of the Federal Rules of Criminal Procedure does not require an explanation of the elements of the offense to convey an understanding of the nature of the charge]; *Stinson* v. *Turner* (10th Cir. 1973) 473 F.2d 913, 916 [a guilty plea was held to be voluntary and intelligent where the "nature of the charge was explained in plain terms for a layman to understand"].)

[8]We have already noted that petitioner failed to allege a prima facie case for relief on *Boykin-Tahl* grounds because he did not demonstrate that he had not knowingly waived his right to such relief. (See fn. 3, *ante.*) It appears, moreover, that petitioner has failed in other respects to allege a prima facie case on *Boykin-Tahl* grounds.

Petitioner is not entitled to collateral relief merely because of a *Boykin-Tahl* denial as in such event the writ would merely serve as an alternate path for appellate review. He must, in these circumstances, establish that his admissions were involuntary for want of the admonitions required by *Boykin-Tahl.* But notwithstanding the absence of such admonitions, if he were in fact independently aware of *Boykin-Tahl* rights, then his admissions could not be deemed involuntary and he would not be entitled to collateral relief. (See *Henderson* v. *Morgan, supra,* 426 U.S. 637, 645, fn. 13 [49 L.Ed.2d 108, 114].) Petitioner has failed in the instant collateral attack to allege his lack of knowledge of *Boykin-Tahl* rights. He has not alleged, for instance, that he was unaware of the consequences of his admission of the truth of the allegations of the third supplemental petition. Although he thus fails to allege a prima facie case for *Boykin-Tahl* relief on such ground, we have nevertheless dealt with the substantive *Boykin-Tahl* issues. (See fn. 3, *ante.*)

with no basis for a belief that had he been properly admonished he would have entered a different response to the allegations of the petition. Nor does he claim even now that he was not aware that his admission of the truth of the allegations of the third supplemental petition would most likely result in his detention in a Youth Authority facility. We thus do not believe it reasonably probable that such admonishment would have persuaded petitioner to deny the truth of the allegations. It thus appears that insofar as the record and petitioner's allegations establish, he was not prejudiced by the failure of the court to advise him of the consequences of his admission and he is entitled to no relief on *Boykin-Tahl* grounds.

### *Parole Revocation Procedures*

As previously noted, petitioner's parole was twice revoked by the Youth Authority after the juvenile court had found that allegations of criminal activity contained in supplemental petitions were true. In each instance the juvenile court made no dispositional order and merely referred the matter to the Youth Authority "for final disposition."

Supplemental petitions are authorized in juvenile proceedings by section 777, which provides in part that "an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition." The supplemental petition procedure is designed for situations where it is necessary to substitute a more restrictive placement because the original disposition by the juvenile court "has not been effective in the rehabilitation or protection of the minor." (§ 777, subd. (a).) Typically, a section 777 supplemental petition will be required to move a minor from a foster home or juvenile hall to the custody of the Youth Authority. (See, e.g., *In re Arthur N.* (1976) 16 Cal.3d 226, 230 [127 Cal.Rptr. 641, 545 P.2d 1345]; *In re William S.* (1970) 10 Cal.App.3d 944, 950 [89 Cal.Rptr. 685].) Since this modification results in a greater intrusion on the minor's liberty, a section 777 petition must contain a statement of the facts which it is alleged demonstrate a need for Youth Authority placement (*In re Donna G.* (1970) 6 Cal.App.3d 890, 894 [86 Cal.Rptr. 421]) and can only be sustained after notice and hearing.

█ The supplemental petition procedure of section 777 is not an appropriate means by which to initiate revocation of Youth Authority parole. Although the juvenile court technically retains jurisdiction over a ward committed to the Youth Authority, no purpose is served by the

procedure employed in this case since no order "changing or modifying a previous order" resulted from the hearing on the supplemental petition. Petitioner had already been committed to the custody of the Youth Authority by the juvenile court, and the court's finding that the allegations of the fourth and fifth supplemental petitions were true had no effect on his order of commitment.

Examination of the statutes governing Youth Authority parole and revocation procedure indicates that the juvenile court should play no part in the parole revocation process. The Youth Authority Act provides that the board has the power to grant and revoke parole. (§ 1711.3.) The Authority may "order reconfinement or renewed release under supervision as often as conditions indicate to be desirable." (§ 1766, subd. (a)(3).) Additionally, "[t]he Authority may suspend, cancel, or revoke any parole without notice, and may order returned to the custody of the Authority any person committed to it who is upon parole." (§ 1767.3.)

No role is specified for the juvenile court with respect to revocation of parole. The reason is clear: the Youth Authority Act contemplates that the board or its representative is to conduct the parole revocation hearing, and then itself determine whether a parole violation in fact occurred and take appropriate action with respect to revocation or continuation of parole. The juvenile court is not authorized to act essentially in the role of a Youth Authority parole revocation hearing officer, as it did in this case.

Relief, if any, to which petitioner may be entitled because of defects in proceedings for revocation of Youth Authority parole can be predicated only on proceedings related to the allegations of the fifth supplemental petition, the last of such proceedings. Because petitioner's initial wardship determination and commitment to the Youth Authority are not now vulnerable to attack, and because defects in the parole revocation proceedings on violations related to the fourth supplemental petition were rendered moot for purposes of habeas corpus when petitioner was thereafter restored to parole (cf. *In re Love* (1974) 11 Cal.3d 179, 185, fn. 4 [113 Cal.Rptr. 89, 520 P.2d 713]), he may now attack only those defects in proceedings which resulted in his current confinement in the Youth Authority.

The People assert that petitioner was not prejudiced by the procedures followed because he received all of the protections afforded at a normal administrative hearing. But petitioner had no right of appeal from the juvenile court finding (see § 800) and he was precluded from challenging

before the Youth Authority "the truth of matters established in court." (See Cal. Youth Authority, Board Policy Man., § 64.) Petitioner was thus bound by and foreclosed from seeking review of the findings made by the juvenile court pursuant to the unauthorized procedures initiated by the filing of the fifth supplemental petition. ■ Absent subsequent findings of misconduct made in lawfully conducted hearings the Youth Authority cannot, for any purpose, rely on misconduct charged in and found to be true by the juvenile court unless such finding results in an appealable order.

■ Notwithstanding the foregoing, it appears that petitioner is not now entitled to any relief. Since the commencement of these proceedings petitioner was again placed on parole by the Youth Authority. The only relief to which petitioner might have been entitled as the result of the failure of the Youth Authority board to make proper findings of the charged violations[9] was the right to a new revocation hearing before the board. (See *In re Brown* (1967) 67 Cal.2d 339, 341 [62 Cal.Rptr. 6, 431 P.2d 630].) As petitioner has been restored to parole that right has been rendered moot.

The order to show cause is discharged and the petition for the writ of habeas corpus is denied.

Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., Sullivan, J.,† and Kaus, J.,‡ concurred.

Petitioner's application for a rehearing was denied May 12, 1977.

---

[9]The board charged four violations of parole. At the parole revocation hearing burglary and resisting arrest violations were shown merely by establishing that petitioner was the same person who had been subjected to juvenile court findings on the fifth supplemental petition alleging the same violations. It was additionally charged and the board found on evidence received at the parole revocation hearing that petitioner was guilty of truancy and possession of deadly weapons violations, which matters had not been considered or found by the juvenile court.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.