[Crim. No. 3056. Fifth Dist. Feb. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN G. WAGONER, Defendant and Appellant.

**COUNSEL**

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Richard E. Shapiro, Richard L. Phillips and Mark L. Christiansen, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Nancy L. Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## FRANSON, J.—

### Statement of the Case

Appellant was charged by information with two counts of violating Health and Safety Code section 11353, subdivision (a), unlawfully administering a controlled substance to minors. He also was charged with having previously been convicted of a felony. Appellant was arraigned on the charges, pleaded not guilty to both counts and admitted his prior conviction. However, appellant ultimately withdrew his not guilty pleas and entered pleas of not guilty by reason of insanity.

The court appointed two doctors to examine appellant. After jury trial on the issue of appellant's sanity, verdicts were returned finding that appellant was sane at the time of the offense.

At sentencing, appellant requested that he be sent to the California Rehabilitation Center pursuant to Welfare and Institutions Code section 3051. This request was denied and he was sentenced to state prison for the term prescribed by law.

### Discussion

■ Initially, we reject the respondent's contention that this appeal is precluded by appellant's failure to obtain a certificate of probable cause to appeal pursuant to Penal Code section 1237.5. That section provides that no appeal shall be taken by a defendant from a judgment of conviction upon a plea of guilty or nolo contendere except where the defendant has filed with the trial court a written statement showing reasonable constitutional, jurisdictional or other grounds going to the legality of the proceedings, and the court has executed and filed a certificate of probable cause for such appeal. Respondent's argument is based on the fact that an insanity plea standing alone is the equivalent of a guilty plea for the purpose of the *Boykin-Tahl* requirements. (*People* v. *Rizer* (1971) 5 Cal.3d 35, 42-43 [95 Cal.Rptr. 23, 484 P.2d 1367].) However, the fact that courts have extended the protections afforded a defendant under *Boykin* and *Tahl* to a defendant who pleads not guilty by reason of insanity does not mean that the insanity plea is identical to a guilty plea for all purposes. Under Penal Code section 1016, which enumerates six different kinds of pleas, the plea of *not guilty by reason of*

*insanity* (subd. 6) is a separate and distinct plea from either a plea of not guilty or nolo contendere. Thus, the Legislature could not have intended that section 1237.5 would apply to appeals from convictions following an insanity plea. In view of the narrow interpretation generally given to section 1237.5 and the strong policy favoring disposition of appeals on the merits rather than dismissing them for some technical defect (see *People v. Robinson* (1954) 43 Cal.2d 143, 145 [271 P.2d 872]; *People v. Guerrero* (1943) 22 Cal.2d 183, 185 [137 P.2d 21]), appellant is entitled to have his appeal processed by this court.

 Appellant contends that his conviction must be reversed because the record fails to demonstrate that he was fully advised of the possible penal consequences of withdrawing his not guilty pleas and pleading not guilty by reason of insanity. Since appellant's insanity pleas constituted an admission that he committed the offenses charged (Pen. Code, § 1016), he argues that the trial court committed reversible error by failing to advise him that Health and Safety Code section 11353, subdivision (a), as it read at the time the crime occurred in 1976, provided that any adult convicted of administering a controlled substance to a minor shall be punished by imprisonment for a period of 10 years to life and "shall not be eligible for release . . . on parole . . . until he has been imprisoned for a period of not less than five years."

Appellant was advised by the court of the following rights: a speedy and public trial by jury, assistance of counsel, to confront his accusers, to present evidence and compel the attendance of witnesses to testify in his behalf, and the privilege against self-incrimination. Appellant was advised of the maximum sentence for the charged felonies (10 years in prison) and he was also advised that if convicted he would be ineligible for probation. However, the record does not indicate that appellant was told that he would be ineligible for release from prison until he had served the mandatory five-year term required by section 11353, subdivision (a).

 A defendant who enters a guilty plea must be advised of his constitutional rights to a jury trial, to confront witnesses and the privilege against self-incrimination as well as the nature and consequences of his plea. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) The record must show that the defendant was so advised and that he expressly waived those rights; these precautions are necessary to insure that the waiver was intelligent and voluntary. It has been held that the

*Boykin-Tahl* admonishments are also required when a defendant enters a plea of not guilty by reason of insanity without also pleading not guilty. (*People* v. *Rizer, supra,* 5 Cal.3d 35.) Therefore, the trial court was required to advise appellant of the mandatory five-year term before accepting his insanity plea.

■ Nevertheless, our California Supreme Court has stated that although the admonishments with respect to the privilege against self-incrimination, the right to a jury trial, and to confront witnesses are constitutionally compelled, the requirement that a defendant be admonished concerning the penal consequences of his plea is merely a "judicially declared rule of criminal procedure." (*In re Ronald E.* (1977) 19 Cal.3d 315, 320-321, 325 [137 Cal.Rptr. 781, 562 P.2d 684]; *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561]; see also *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 530 [145 Cal.Rptr. 636].) Thus, when the admonishment which is not reflected by the record is not one which is constitutionally compelled, the Supreme Court has employed the *Watson* test (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also Cal. Const., art. VI, § 13) for prejudicial error. (*In re Ronald E., supra,* 19 Cal.3d 315, 325.) In that case, the court deemed it significant that the petitioner had not demonstrated that he would have entered a different response to the allegations in the petition if he had been fully advised as to the consequences of the plea. Therefore, the court found that it was not reasonably probable that a different result would have obtained if the admonishment had been given (*id.,* at p. 326).

Appellant acknowledges that when a plea is collaterally attacked on the ground that the record does not affirmatively establish that the defendant was advised of the penal consequences of the plea, he must show that he was prejudiced by the trial court's failure to so advise. He must make a showing during the collateral action that he did not know of the direct consequences of the plea and, had he known, he would not have pleaded guilty. (*In re Ronald E., supra,* 19 Cal.3d at pp. 325-326; *In re Yurko, supra,* 10 Cal.3d 857, 864.) However, appellant asks this court to formulate a different rule where the efficacy of the plea is challenged on *direct appeal* as in the present case. Appellant argues that in a direct review of the adequacy of the record made at the time the plea is entered a defendant should not be required to demonstrate prejudice, but rather prejudice must be presumed from a silent record. We decline appellant's invitation to formulate such a rule. Until the Supreme Court declares that the *Watson* standard of review articulated in *In re Ronald E., supra,* does not apply to a review on appeal, we believe we are governed by the

holding of these cases.[1] ■ In the present case, appellant has not contended that he would have entered a different plea if he had been advised that he would have to serve at least five years if convicted. In view of the strong evidence of guilt (there were three witnesses who saw appellant administer heroin to the minors), it is not reasonably probable that appellant would have entered a different plea. Moreover, even if he had pled not guilty to the charged crimes, it is not reasonably probable that he would have been acquitted; therefore, the trial court's failure to fully advise appellant of the possible penal consequences of his plea was harmless. (*People* v. *Watson, supra,* 46 Cal.2d 826.)

■ Appellant next contends that his conviction must be reversed because the jury was instructed to evaluate his mental capacity under the M'Naghten standard for insanity. As we shall explain, although it was error to instruct the jury on the M'Naghten test, the error was not prejudicial.

In *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318], the California Supreme Court disapproved the M'Naghten test for insanity and replaced it with the American Law Institute (ALI) test which provides as follows: " 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.' " (*Id.,* at pp. 336-337, fn. 3.) The Supreme Court stated that the *Drew* decision would apply retroactively to those cases not yet final at the time it was filed. Therefore, the holding of *Drew* applies to the instant appeal.

[1] In *People* v. *Tabucchi* (1976) 64 Cal.App.3d 133, 142-144 [134 Cal.Rptr. 245], this court recognized the importance to defendants of the right to parole and noted the widespread knowledge of persons charged with crime concerning the "one-third minimum time" parole policy in usual cases. (See Pen. Code, § 3049.) However, in *Tabucchi* the defendant had told the court when he entered his guilty plea that he was under the impression that he would be eligible for parole after having served one-third of the minimum term. Thus, prejudice to the defendant was affirmatively demonstrated by the record. In the present case, it is unclear whether appellant was aware that Health and Safety Code section 11353 dictated that he could not be paroled until he had served five years in prison, rather than after one-third of the minimum term had been served.

Moreover, as the Attorney General points out, appellant will not be prejudiced in any event by the five-year minimum parole provision of section 11353 as it read at the time of his plea. Under the determinate sentence law, section 11353 was amended to provide that for crimes committed after July 1, 1977, punishment is to be three, four or five years in prison. There is no minimum mandatory term. Under Penal Code section 1170.2, subdivision (e) the Community Release Board will fix appellant's term without reference to the five-year minimum term for parole eligibility.

Appellant's argument that the trial court's instruction of the jury under the disapproved M'Naghten rule constitutes reversible error per se, is an incorrect interpretation of *Drew*. First, in *Drew* the court stated that the defendant would be entitled to an order directing the trial court to find him insane if the evidence at the sanity trial demonstrated that he was insane as a matter of law under the ALI test. Because the evidence presented there was not directed to the critical issues in establishing insanity under the ALI test, the record was insufficient to prove insanity as a matter of law under the new test (*id.,* at p. 349, fn. 14). The court then examined the record to determine whether Drew was entitled to a new trial on the sanity issue. After reviewing the evidence of insanity, the court concluded that if the jury had been instructed under the ALI test, it *"probably* would have returned a verdict finding Drew insane." (*Id.,* at p. 352, italics added.) Therefore, the error was prejudicial to Drew and his conviction had to be reversed.

The court's use of the word "probably" demonstrates that it was employing the *Watson* test (*People* v. *Watson, supra,* 46 Cal.2d at pp. 835-837) for prejudicial error. The instructional error is not of constitutional dimension because sanity is not an element of the crime; insanity is a defense which the defendant is required to prove.[2] Therefore, in determining whether the use of the M'Naghten test constituted reversible error in the present case, we must examine the record to determine if there is a reasonable probability that the defendant would have been found not guilty by reason of insanity had the case been tried under the ALI standard and the jury instructed accordingly. As we shall explain, we find no such reasonable probability.

The evidence bearing on appellant's mental state consisted mainly of testimony by two physicians who had conducted psychiatric and neurological examinations of appellant.[3] Dr. Paul Levy and Dr. Mark Zeifert both testified that appellant was a chronic alcoholic and drug abuser. The doctors also agreed that appellant's alcohol and drug abuse had not yet caused organic brain damage. However, the two doctors disagreed as to the effect of the drugs and alcohol on appellant's capacity to appreciate the wrongfulness of his acts in injecting the minors with heroin. Dr. Levy

---

[2] The Supreme Court held in *Drew* that the California Constitution was not violated by placing the burden of proof of insanity on the defendant (22 Cal.3d at pp. 348-349).

[3] In addition to the testimony of the medical experts, there was also testimony from three witnesses to the events in question: appellant's codefendant and the two minors to whom appellant gave the "fix." Those witnesses observed that appellant didn't appear to know what he was doing, and acted as though he didn't care what happened; that his mind drifted in conversation and that he acted "kind of strange."

testified that he found no evidence that appellant was unable to distinguish right from wrong. He concluded that appellant was legally sane at the time of the offense. Dr. Zeifert disagreed; he opined that at the time of the offense appellant was "incapable of fully appreciating the nature and quality of his acts" and "didn't know right from wrong." Dr. Zeifert believed that appellant had ingested enough intoxicants to be rendered insane at the time he committed the acts.

However, Zeifert also testified that appellant's sanity was restored after the effects of the intoxicants wore off. On cross-examination, Dr. Zeifert was asked whether it could be said that appellant was legally insane at the time he committed the acts if the legal definition of insanity required that the mental disorder produced by voluntary intoxication continue after the effects of the drug wore off, i.e., if the insanity was "settled." Dr. Zeifert answered that under that definition, appellant would be sane.

■ The California Supreme Court has held that a mental disorder produced by voluntary intoxication is a complete defense to a general intent crime only if the disorder extends beyond the period of intoxication (*People* v. *Kelly* (1973) 10 Cal.3d 565, 575-576 [111 Cal.Rptr. 171, 94 Cal.Rptr. 835]). If a mental disorder resulting from voluntary intoxication lasts only throughout the period of intoxication this may constitute a partial defense which will eliminate specific intent, but in order to constitute a complete defense to a general intent crime, the insanity must be "of a settled nature."[4]

There is nothing in *Drew* which suggests that the shift from M'Naghten to the ALI test would affect this concept of settled insanity. Since that principle is still in effect, we conclude that appellant does not have a valid insanity defense under either M'Naghten or the ALI test. The charged offense (furnishing heroin to a minor) is a general intent crime assuming knowledge of the substance as heroin. (See *People* v. *Daniels* (1975) 14 Cal.3d 857, 860-862 [122 Cal.Rptr. 872, 537 P.2d 1232]; CALJIC No. 12.10 (3d ed. 1976 pocket pt.) p. 222.)[5] Therefore, voluntary intoxication must result in "settled insanity" to constitute a defense to that crime.

Since both doctors testified that the appellant's mental defect dissipated after his intoxication wore off, appellant's mental defect was not of the type which could constitute a complete defense to the charged crime. The

---

[4]The jury was properly instructed regarding this concept of "settled insanity."

[5]Compare CALJIC No. 12.10 with No. 12.11 which is a specific intent crime and expressly states as much.

result would be the same under either test. Therefore, the court's error in giving a M'Naghten instruction was not prejudicial.

■ Appellant next argues that the trial court acted improperly in refusing to initiate proceedings for commitment to California Rehabilitation Center (CRC). He contends that a remand is necessary because the sentencing judge used an improper basis for his decision that appellant was not a fit subject for commitment to CRC under Welfare and Institutions Code section 3051.[6] The trial court's comments at sentencing indicate that it considered three factors in determining that appellant was not a suitable candidate for CRC: (1) appellant's excessive criminality; (2) the seriousness of the offense for which he was being sentenced; and, (3) appellant's medical problems. Appellant argues that the court should have considered only the first of these factors.

In determining whether to commit a defendant to the CRC, the trial court is limited under section 3051 to a consideration of whether the defendant's record indicates such a pattern of criminality as to make him an unfit subject for commitment (*People* v. *Lopez* (1978) 81 Cal.App.3d 103, 110 [146 Cal.Rptr. 165]; see also *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 938 [103 Cal.Rptr. 405]; *People* v. *Leonard* (1972) 25 Cal.App.3d 1131, 1136-1137 [102 Cal.Rptr. 435]). In *Lopez* the trial judge had considered the defendant's apparent lack of sincere motivation for rehabilitation as the basis for his finding that the defendant was not a suitable CRC candidate. Apparently the judge there had not found the defendant unfit by virtue of excessive criminality; he made no reference to the defendant's criminal record. Therefore, this court remanded with directions to the trial court to consider only the defendant's demonstrated criminality in determining whether proceedings should be instituted under section 3051.

Thus, the trial court in the instant case should not have considered appellant's medical problems as a ground for refusing to initiate commitment proceedings. This is a matter for the trained experts at CRC. (See *People* v. *Marquez* (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854].) However, we do not find that appellant was prejudiced by the court's consideration of his health in deciding whether to initiate proceedings under section 3051. Judge Joy's comments at the hearing

---

[6]Section 3051 establishes the procedure whereby a sentencing judge can initiate commitment proceedings. That section provides in pertinent part: "Upon conviction of a defendant for any crime . . . if it appears to the judge that the defendant may be addicted . . . he shall adjourn the proceedings . . . *unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment. . . .*" (Italics added.)

indicate that he had examined appellant's record and found a pattern of excessive criminality. Because of that finding, it is not reasonably probable that the judge would have initiated commitment proceedings even without relying on other factors. Moreover, it seems appropriate for the trial court to consider the seriousness of the crime for which appellant was being sentenced because of its relevancy to a determination of "excessive" criminality.

Appellant's second contention regarding the court's determination that he was unfit for commitment to CRC is that the trial court improperly relied on a probation report and a Department of Justice, criminal identification and investigation report containing impermissible references to arrests which did not result in convictions.　First, appellant should be deemed to have waived this issue. At the sentencing hearing defense counsel approved the contents of the probation report by stating: "The statistical information on the face of the probation report is true and correct. There are no corrections or additions or deletions to the probation report . . . ." Absent an objection at the trial level to the contents of the probation report, a defendant is deemed to have waived this issue. (*People* v. *Medina* (1978) 78 Cal.App.3d 1000, 1006-1007 [144 Cal.Rptr. 581].) "[U]nless the record shows an objection to allegedly improper entries [in the probation report] and an erroneous ruling thereon, the issue is simply not available on appeal." (*Id.,* at p. 1007.)

Furthermore, our review of the record does not demonstrate that appellant was prejudiced by the inclusion of the arrest in his probation report. Unlike *People* v. *Romero* (1977) 68 Cal.App.3d 543 [137 Cal.Rptr. 675], the sentencing judge in the present case made no comments suggesting that he was swayed by the mere "length" of appellant's arrest record. We find no basis for holding that absent the arrest record, the trial judge would have committed appellant to CRC.

The judgment is affirmed.

Brown (G. A.), P. J., and Hopper, J., concurred.

A petition for a rehearing was denied March 15, 1979, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 26, 1979.