[Crim. No. 11378. Third Dist. June 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
AVILA DALE ROWLAND, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Mark L. Christiansen and Charles M. Bonneau, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Margaret E. Garnand, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—Defendant Avila Dale Rowland was charged with one count of murder in violation of Penal Code section 187. It was further alleged that in the commission of the murder defendant used a deadly and dangerous weapon (Pen. Code, § 12022, subd. (b)), and that he had served one prior prison term for conviction of a felony. (Pen. Code, § 667.5, subd. (a).) Defendant agreed to submit the question of his guilt or innocence to the trial court for determination based upon the evidence presented at the preliminary hearing. The prosecutor then moved to strike the allegations of the use of a deadly weapon and of a prior conviction. The trial court found defendant to be guilty of first degree murder, and sentenced him to state prison for the term provided by law.

Defendant appeals contending: (1) the trial court failed to ascertain that he understood the nature of the charges against him and his right to present evidence on his own behalf before accepting the stipulation that the matter be submitted on the preliminary examination transcript; (2) the evidence is insufficient to support a conviction for first degree murder; and (3) he is entitled to conduct credits for time served prior to sentencing.

We conclude that while the evidence well supports the finding that defendant is guilty of murder, it is insufficient to establish his guilt of first degree rather than second degree murder. Accordingly the judgment must be modified to provide for a conviction and sentence for second degree murder. We reject defendant's argument that he did not understand that an element of murder is the intent to cause the death of the victim. Our conclusion that the evidence does not support the conviction of first degree murder renders it unnecessary to consider whether the record reflects that defendant understood the requirement of premeditation and deliberation in establishing that offense. We further conclude that the trial court was not required to advise defendant of his right to present evidence, and that any alleged error was harmless. Finally, we agree that defendant is entitled to conduct credit for time served prior to sentencing.

## THE SUFFICIENCY OF THE EVIDENCE

In reviewing a claim that the evidence is insufficient to support a conviction, our role as an appellate court is clear. We must view the evi-

dence in the light most favorable to the judgment and presume in support of the judgment every fact the trier of fact could reasonably deduce from the evidence. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576. [162 Cal.Rptr. 431, 606 P.2d 738].) When, in light of the record so viewed, it appears that no reasonable trier of fact could have found each element of the crime beyond a reasonable doubt, then the judgment must be reversed. (*Ibid.*) Before considering the sufficiency of the evidence relating to premeditation and deliberation, it will be useful to recite briefly the circumstances of the murder.

In the spring of 1980 defendant was employed by Star Catering. On the evening of May 23, 1980, defendant attended a party held by Star Catering at the airport. Also in attendance at the party was the victim, known as Kitty. At some point in the evening the victim suggested that she, defendant, and others at the party leave to go to the Oasis bar in downtown Sacramento. The victim led the way in her car, and defendant and others followed in their cars.

The group stayed at the Oasis until approximately midnight at which time the victim said she was not feeling well and wanted to go home. Defendant offered to drive the victim home in her car and arranged for Saud Kahn and Don Morris to follow in defendant's car. Instead of taking the victim to her home, however, defendant took her to his apartment. After defendant had taken the victim into his apartment, Saud Kahn and Don Morris left.

Defendant was living at this time with Connie Williams. Williams was in the bedroom watching television when defendant and the victim arrived home. She started to come out of the bedroom but defendant stopped her and sent her back into the bedroom. Defendant told her that "Bob and his old lady" had "got into it" and would be staying there overnight. Williams remained in the bedroom while defendant got a pillowcase and yellow bedspread. Defendant came back into the bedroom and told Williams that "they" were in bed.

Defendant left the bedroom and turned the stereo on too loud. When Williams objected he turned it down, but told her he had to leave to pick up someone from the bar. Williams walked to the front door with defendant, but he took her back to the bedroom and told her to go to sleep. Williams slept for a while and then got up to turn off the stereo and television. At that time Williams heard the bed in the next room

shaking, and then heard a woman say about seven or eight words in a soft voice. After a moment Williams heard the woman say "Hey" and heard some choking sounds. She also heard something banging against the wall. Williams became frightened and ran from the apartment to a neighbor's house.

After Williams had been at the neighbor's house for a while she observed defendant drive the victim's car up to the apartment. She told the neighbor something was going on in the apartment and that there was something wrong with the girl. Defendant went into the apartment, and then came out and told Williams that everything was all right. He told her that he had to leave to pick up someone named Mike and that the car he was driving belonged to Mike. Williams asked to go with defendant several times but he refused to permit her to do so. At that time defendant had a noticeable scratch on his face. When defendant refused to permit Williams to go with him, she drove away in her own car.

The neighbor to whose home Williams had run was Selma Smith. After Williams left, Smith observed defendant park the victim's car near his apartment and open the passenger door. He then went into his apartment and returned carrying what appeared to be a body wrapped in a yellow blanket. Defendant put the body in the car and drove away.

The following Sunday morning the body of the victim was discovered abandoned along a dirt road in an area which is often used for unauthorized dumping. She had a cloth shirt over her face and an electrical cord tied around her neck. It was determined that she had died from ligature strangulation.

█ In order for a murder to be first degree based upon a theory of premeditation and deliberation, the intent to kill must have been formed upon a preexisting reflection and must have been the subject of actual deliberation and forethought. (*People* v. *Anderson* (1968) 70 Cal.2d 15, 26 [173 Cal.Rptr. 550, 447 P.2d 942].) A finding of first degree murder due to premeditation and deliberation is proper only when the slayer killed as the result of careful thought and weighing of considerations, as a deliberate judgment or plan, carried on coolly and steadily, especially according to a preconceived design. (*Ibid.*)

"The type of evidence which [the Supreme Court] has found sufficient to sustain a finding of premeditation and deliberation falls into

three basic categories: (1) facts about ... what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would ... support an inference that the killing was the result of a 'pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take [the] victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2).

"Analysis of the cases will show that [the Supreme Court] sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*Id.*, at pp. 26-27, italics in original.)

The record contains little that can be said to show planning. The People assert that defendant's efforts to ensure that Williams did not learn of the victim's presence in the apartment show planning. It is necessary, however, that evidence of planning activity be directed toward, and explicable as intended to result in, the killing. Defendant's activities in regard to Williams show only that he wished to conceal from her the fact that he had brought a strange woman home with him, a desire which is quite natural considering that Williams was defendant's live-in companion at the time. The People further assert that the use of an electrical cord shows that defendant must have taken "thoughtful measures" to procure a weapon for use against the victim. An electrical cord, however, is a normal object to be found in a bedroom and there was no evidence presented that defendant acquired the cord at any time prior to the actual killing.

We recognize, as the People assert, that all reasonable inferences must be drawn in support of the judgment. This rule, however, does not permit us to go beyond inference and into the realm of speculation in order to find support for a judgment. A finding of first degree murder which is merely the product of conjecture and surmise may not be af-

firmed. (*Id.*, at p. 25.) The evidence of planning in this case was minimal, and in the absence of evidence of types (2) or (3) cannot be said to show planning directed toward and explicable as intended to result in the death of the victim. It is not the type of "extremely strong evidence" of planning activity which is required to support a finding of premeditation and deliberation by itself.

The People assert that defendant's "[m]otive is evident." We find to the contrary. There was no evidence that defendant knew the victim prior to the night in question. It appears that he took her to his home in hopes of a sexual interlude, but such evidence fails to provide a motive for murder. The People contend that defendant must have intended to prevent any sound which would have betrayed the victim's presence to Williams. Such a purpose, however, supports the conclusion that the murder was more of a spontaneous reaction than a premeditated and deliberated plan to end the victim's life.

Finally, we consider the manner of killing. The People argue that strangulation with an electrical cord shows a deliberate intent to kill. We agree. (See *People* v. *Bender* (1945) 27 Cal.2d 164, 178, 186-187 [163 P.2d 8].) A deliberate intent to kill, however, is a means of establishing malice aforethought and is thus an element of second degree murder in the circumstances of this case. In order to support a finding of premeditation and deliberation the manner of killing must be, in the words of the *Anderson* court, "so particular and exacting" as to show that defendant must have "intentionally killed according to a 'preconceived design' ...." (*Id.*, at p. 27.) The ligature strangulation in this case fails to show that defendant must have premeditated and deliberated the killing.

■ An unjustified killing of a human being is presumed to be second, rather than first, degree murder. (*Id.*, at p. 25.) In order to support a finding that the murder is first degree the People bear the burden of proving beyond a reasonable doubt that the defendant premeditated and deliberated the killing. (*Ibid.*) ■ In view of the lack of an established motive or exacting manner of killing in this case, the minimal evidence of planning on defendant's part fails to support a conviction for first·degree murder.

The evidence is clear that defendant killed the victim. The record is also totally barren of any suggestion of justification, mitigation, excuse

or diminished capacity. It is thus clear that defendant is guilty of second degree murder. On appeal from a judgment of the superior court an appellate court is not limited to reversal or affirmance. It may modify the judgment by reducing the degree of the offense and the punishment imposed. (Pen. Code, § 1260.) In this case the proper disposition is to modify the judgment to hold defendant guilty of second degree murder and to modify the punishment to the term provided by law for that offense.

### SUBMISSION ON THE PRELIMINARY HEARING EVIDENCE

Defendant contends that the trial court failed to properly advise him concerning the submission of the matter on the evidence at the preliminary hearing and failed to take appropriate waivers of his rights. This contention is based upon the opinion in *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], where the Supreme Court set forth the requirements for acceptance of a submission on the transcript. There the court concluded that "in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. It shall also demonstrate that he understands the nature of the charges. Express waivers of the enumerated constitutional rights shall appear. In cases in which there is to be a submission without a reservation by the defendant of the right to present evidence in his own defense he shall be advised of that right and an express waiver thereof taken. If a defendant does not reserve the right to present additional evidence and does not advise the court that he will contest his guilt in argument to the court, the defendant shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged. In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302." (*Id.*, at p. 605.)

In accepting the submission of the matter on the preliminary hearing transcript, the trial court advised defendant of his rights to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. Defendant expressly waived those rights. The court further explained

the direct consequences of conviction and that submission of the matter was likely to result in conviction of some form of homicide. Defendant does not contend otherwise.

Defendant argues that the record does not demonstrate that he understood the nature of the charges against him. The information charged defendant with murder in that he "willfully, unlawfully, and feloniously, and with malice aforethought" murdered the victim. At the time defendant agreed to submit the matter on the preliminary hearing transcript, his counsel indicated that he had informed defendant that such a course of action was "pleading guilty to something." Counsel further advised the court that the main contention was a question of degree; that defendant would likely be found guilty of homicide but not necessarily of first degree murder. Argument thereafter centered on the elements of premeditation and deliberation in determining the degree of defendant's guilt.

Defendant asserts that as a matter of both state and federal law his conviction must be reversed. He relies upon *Henderson* v. *Morgan* (1976) 426 U.S. 637 [49 L.Ed.2d 108, 96 S.Ct. 2253], and *In re Ronald E.* (1977) 19 Cal.3d 315 [137 Cal.Rptr. 781, 562 P.2d 684]. In *Henderson* the United States Supreme Court affirmed a lower court order granting a petition for writ of habeas corpus. The lower court had specifically found that the element of intent to kill in a charge of second degree murder had not been explained to the defendant before his guilty plea had been accepted. The Supreme Court affirmed, noting this specific finding, and further noting that the defendant's unusually low mental capacity provided an explanation for counsel's oversight and provided a modicum of credibility for defense counsel's appraisal of the homicide as manslaughter rather than murder. (426 U.S. at p. 647 [49 L.Ed.2d at p. 116].) In affirming, however, the court noted: "Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (*Ibid.* [49 L.Ed.2d at pp. 115-116].)

The present case is inapposite to the situation in *Henderson*. There is no evidence here to suggest that counsel failed to explain the nature of the charges to defendant. Defendant and counsel indicated that they

had discussed the charges. There is no evidence to suggest that defendant is of limited mental capacity or otherwise incapable of understanding the nature of the charges. There is likewise no suggestion that counsel ever appraised defendant's offense as less than murder. Defendant had access to the accusatory pleading and was present at the preliminary hearing. He was present at argument in superior court after stipulating to submission of the matter. In view of these factors this case does not present the unique situation presented in *Henderson*, but rather presents a situation in which it is appropriate to presume that counsel explained, and defendant understood, the nature of the charges.

██ In *In re Ronald E., supra*, 19 Cal.3d 315, the California Supreme Court held that the requirement that a defendant understand the nature of the charges prior to entering a guilty plea is satisfied if the record "demonstrates" that he had fair notice of what he was asked to admit. (19 Cal.3d at p. 324.) There is no compulsion that the record show an explanation of the technical elements of the offense; it is sufficient that the record fairly demonstrates that the defendant knowingly admitted to having engaged in a detailed course of conduct which constituted the violation. (*Ibid.*) ██ In this case the accusatory pleading, defendant's presence at the preliminary hearing, the discussions between the court, counsel and defendant before the stipulation to submit the matter, the arguments upon submission, and counsel and defendant's representations that they had discussed the matter, compel the conclusion that defendant understood that he was charged with intentionally causing the death of the victim. As the Court of Appeal said in *People* v. *Orduno* (1978) 80 Cal.App.3d 738, 749-750 [145 Cal.Rptr. 806]: "[i]t may certainly be inferred from the fact that he had been served with a copy of the information, had gone through a preliminary examination and was represented by able counsel, that he was aware of the nature of the charges against him. To say that he did not understand the nature of the charges against him would be to indulge in pure sophistry."

Defendant's assertion that the record fails to show that he understood the nature of premeditation and deliberation need not be considered. We have already noted that the evidence was not sufficient to support the conviction of first degree murder on a premeditation and deliberation theory. Since we modify the conviction and judgment to second degree murder, defendant has suffered no possible prejudice from the alleged failure to ensure that he understood the elements of the crime of first degree murder.

■ Defendant next asserts that the trial court failed to advise him of his right to present evidence on his own behalf. A trial court must advise a defendant of this right only in those cases where the right to present evidence is not reserved. (*Bunnell* v. *Superior Court, supra*, 13 Cal.3d at p. 605.) In this case the stipulation of the parties expressly reserved the right to present additional evidence and argument. The trial court was therefore not required to obtain an express waiver of this right. The fact that as a tactical matter defendant's counsel chose not to present evidence but only to argue the case does not change this result.

In any event, before the failure of the trial court to advise a defendant of the right to present evidence may be considered reversible error it must appear that the defendant was prejudiced thereby. (*People* v. *Orduno, supra*, 80 Cal.App.3d at p. 750.) Defendant does not suggest, and there is not a hint in the record, of anything defendant could have presented to avoid a finding that he is guilty of murder. While defendant might have testified in a manner which would have served to negate a finding of premeditation and deliberation, his failure to do so did not prejudice him since the evidence was not sufficient to support that finding. There was thus no possible prejudice to defendant.

## Conduct Credits

■ In sentencing defendant the trial court awarded 311 days' credit for presentence incarceration. The court denied defendant conduct credit (good time/work time) on the grounds that a defendant sentenced to an indeterminate term is not entitled to such credits. Defendant contends that he is entitled to conduct credits.

It is true that a person sentenced to prison for life is not entitled to conduct credits. (Pen. Code, § 3046; *People* v. *Sampsell* (1950) 34 Cal.2d 757, 764 [214 P.2d 813].) This is because such a person must serve at least seven calendar years before he is eligible for parole. (Pen. Code, § 3046.) Defendant, however, was sentenced to prison under Penal Code section 190, as enacted by the people in Proposition 7 at the November 1978 General Election. That section provides that the punishment for first degree murder in the absence of special circumstances is 25 years to life, and the punishment for second degree murder is 15 years to life. That section further provides that conduct credit "shall apply to reduce [his] minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be

released on parole prior to such time." Pursuant to that provision defendant is entitled to conduct credit to reduce his minimum period of confinement. Pursuant to *People* v. *Sage* (1980) 26 Cal.3d 498, 508 [165 Cal.Rptr. 280, 611 P.2d 874], defendant is also entitled to such credit for presentence time spent in custody. The court thus erred in denying such credit.

Defendant received 311 days of presentence credit for time actually served. ■ The proper formula for determining the amount of conduct credit is one day of such credit for every two days served. (*People* v. *Regaldo* (1980) 108 Cal.App.3d 531, 541 [166 Cal.Rptr. 614].) Defendant is thus entitled to 155 days of conduct credit. The judgment will be modified to provide for total presentence credit of 466 days.

The judgment is modified to provide that defendant has been convicted of one count of second degree murder and shall serve the term provided by law for that offense. Defendant is to receive credit for 311 days of actual custody and 155 days of conduct credit for time served prior to sentencing. The trial court shall prepare and forward an amended abstract of judgment to the Department of Corrections reflecting these modifications. In all other respects the judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.