Filed 7/18/13  P. v. Cardoso CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055392 |
| v. | (Super.Ct.No. INF067325) |
| JOEL LEAL CARDOSO, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant Joel Leal Cardoso was convicted by a jury of attempted murder, assault with a deadly weapon, unlawful possession of an assault weapon, and possession of methamphetamine for sale. The jury also found true allegations that the attempted murder was premeditated and deliberate and defendant personally used and discharged a firearm. The trial court imposed an aggregate term of life in prison plus 20 years.

Following the People's case-in-chief, defendant moved to dismiss the attempted premeditated murder allegation pursuant to Penal Code section 1118.1.[1] Defendant argued there was insufficient evidence to show that he acted with premeditation and deliberation. Finding sufficient evidence, the trial court denied the motion.

The evidence showed Robert Smith, among others, would exchange money for drugs with defendant at defendant's workplace. On the evening of November 17, 2009, a drug deal got out of hand and defendant made serious threats toward Smith. Later, a high-speed car chase ensued between defendant and Smith. When defendant's vehicle caught up to the car Smith was a passenger in, defendant fired two or three shots into Smith's car, missing Smith by only a few inches.

On appeal, defendant claims the trial court erred by refusing to grant a judgment of acquittal under section 1118.1 and this court should reverse the judgment. He argues the prosecution's evidence does not reasonably suggest that defendant calculated and

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

planned a design to kill Smith. We conclude the prosecution's evidence is sufficient to support a finding of attempted premeditated murder. We affirm.

## II.  SUMMARY OF FACTS

In that the defendant is challenging the trial court's denial of his section 1118.1 motion, we summarize the facts to the extent they were presented in the prosecution's case.

Defendant started working at the Canton Bistro restaurant six to seven years prior to November 17, 2009, the night of the shooting. Ashley McCallum worked next door and got to know defendant over that period of time. Robert Smith, his fiancée Jayme Wiersma, and Eric Wheeler lived with McCallum. McCallum introduced them to defendant; they regularly bought cocaine and heroin from defendant at his workplace.

Around 4:00 p.m. on the date of the shooting, Smith, Wiersma, and Wheeler were on their way to pick McCallum up from work. Prior to getting there, McCallum contacted defendant for the purpose of buying some cocaine. Smith, Wiersma, and Wheeler met defendant in a parking lot outside McCallum's and defendant's places of work. According to Smith, defendant "gave" Smith cocaine on credit; Smith was to pay defendant $40 later that night.

After the drug transaction, Smith and Wiersma saw McCallum coming out of her place of work. They observed her go to defendant's parked car, open the door, and search around inside. Smith did not know what, if anything, was taken from the car. McCallum, Smith, Wiersma, and Wheeler then drove to McCallum's trailer. Once there,

3

McCallum pulled a handgun from her purse; she said she got the gun from defendant's car.

At this point, Smith believed defendant would suspect him of stealing the gun and would come looking for him. Smith also believed that Wiersma feared defendant would associate her with stealing the gun, and defendant would come after her as well.

Around 10:00 p.m. that evening, Wiersma and Smith drove to a convenience store so they could use the microwave to heat up some frozen burritos. Wiersma was driving her Ford Explorer and Smith was in the front passenger seat. As they were pulling into the store's parking lot, they noticed McCallum walking out of the store and around to the back. They decided to pick her up to take her home so they drove around to the back of the store. As they approached the rear of the store, they noticed McCallum get into a Ford Taurus. They did not recognize the driver of the Taurus, so they made a U-turn and went back to the front of the store and parked. Once parked, the same Taurus pulled up next to the passenger side of the Explorer. At this point, the Taurus's driver's side backseat tinted window rolled down and defendant pointed a rifle at Smith. Defendant looked straight at Smith and mouthed something that Smith was unable to interpret. Smith told Wiersma, "you know, we gotta get out of here." Smith was afraid for his and Wiersma's lives.

Smith testified he again told Wiersma to put the car in reverse and to "get out of here." After exiting the parking lot, they headed north at a high rate of speed. Smith saw

4

the Taurus following them. After driving some distance, Wiersma stepped on the brakes and made a U-turn; the Taurus passed them, but made a U-turn to follow them.

Wiersma once again reached high speeds to try and elude the Taurus. The Taurus caught up to the Explorer until it was almost neck and neck with the driver's side. At that moment, Smith heard two shots and was startled; Wiersma applied the brakes and the Taurus kept driving ahead. Wiersma made a second U-turn to escape the Taurus. After they completed the U-turn, the Taurus made another U-turn to follow them. They eventually found a police officer and made it to safety.

Smith testified he did not get hit by the bullets, but he was bleeding from shattered glass from the windshield. He estimated the bullets hit as close as five to six inches from his head. The bullets traveled from the back rear window, between the headrests, and out the front windshield. One bullet traveled from the rear window and passed through the roof approximately four to six inches above the passenger side window.

Smith stated he owed defendant $40 for the cocaine he obtained from defendant earlier that evening. Smith said he never threatened defendant; in fact, he was avoiding him because he owed him money for the drugs. Smith did not have a firearm at any time that day.

Wiersma's testimony concurred with Smith's with respect to the chase. After seeing defendant holding a weapon in the backseat of the Taurus, she pulled out of the parking lot and headed north, reaching speeds of 80 to 90 miles per hour. She heard three

shots fired close together. She saw Smith ducking in the front seat when the shots were fired.

Wiersma noticed the damage to the front windshield and a shattered passenger side window. In addition, she observed that the two backseat windows were shattered. Wiersma thought defendant shot at them because they obtained the cocaine from him or because they owed him money. Wiersma did not see Smith in possession of a gun at any time that day.

Detective Oscar Santos interviewed defendant after his arrest on November 19, 2009, two days after the shooting. At trial, Detective Santos testified about the interview as follows. Defendant stated he believed Smith had broken into his car and stolen a gun and other items. During the drug exchange, Wiersma grabbed the drugs out of defendant's hand and took off running back to her truck. After the transaction, defendant went back to work; he began receiving threatening phone calls from Smith demanding drugs and money.

Detective Santos asked defendant where he was on the night of the shooting. Defendant stated he received a call from McCallum, who needed a ride home from work. Defendant and his friend, Leo, drove to the convenience store near McCallum's work and picked her up. Leo was driving the Taurus, McCallum was in the front passenger seat, and defendant was in the back. After they drove off, McCallum changed her mind and told them to go back to the store so her friends could pick her up to go to a party. They

6

went back to the store and parked; McCallum exited the vehicle. Defendant saw Smith and Wiersma pulling into the parking lot.

Defendant asked Smith, "Hey, what's up?" He then lifted up a rifle and pointed it at Smith. Defendant's intention at the time was only to scare Smith because he was fed up with being threatened. Smith and Wiersma left the store after seeing the rifle. Defendant drove after them and caught up to them. Defendant admitted to Detective Santos that he shot at the windows of the Explorer and knew he could hit people. He aimed at Smith, but Smith was ducking and lying down. He said he wanted to hit Smith because he was tired of the threats.

## III. DISCUSSION

A. *Section 1118.1 Motion*

The court "on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such an offense or offenses on appeal." (§ 1118.1.)

Pursuant to section 1118.1, defendant moved for a judgment of acquittal at the close of the prosecution's case-in-chief. He argued that there was no evidence that the attempted murder involved premeditation and deliberation. Finding that there was substantial evidence of premeditation and deliberation, the trial court denied the motion. We hold that substantial evidence supports the trial court's decision.

7

B.  *Standard of Review*

"When reviewing a claim the trial court erred by denying a motion for acquittal under section 1118.1, we apply the same standard as when evaluating the sufficiency of evidence to support a conviction, except that we consider only the evidence in the record at that time the motion was made."  (*People v. Roldan* (2011) 197 Cal.App.4th 920, 924.)  "'[T]hat is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged."'"  (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)  "The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.'"  (*Ibid*.)

"On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Smith* (2005) 37 Cal.4th 733, 739.)  "In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one."  (*Id*. at p. 738.)  "'"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . ."'"  (*Id*. at pp. 738-739.)  "Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our own evaluation of a witness's credibility for that of the fact finder."  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Defendant contends the trial court erred in denying his section 1118.1 motion for acquittal as to the attempted premeditated murder charge because there was insufficient evidence to show premeditation and deliberation. We disagree.

C. *Degrees of Murder*

Murder, as defined in section 187, "is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) A killing which is willful, deliberate and premeditated is murder of the first degree. (§ 189.)

"Attempted murder requires the intent to kill plus a direct but ineffectual act toward its commission." (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207 (*Ramos*).) "'"The wrong-doer must specifically contemplate taking life; and though his act is such as, were it successful, would be murder, if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder." [Citation.]'" (*People v. Bland* (2002) 28 Cal.4th 313, 328.) For an attempted murder to be premeditated and deliberate "the intent to kill must have been formed upon a preexisting reflection and must have been the subject of actual deliberation and forethought." (*People v. Rowland* (1982) 134 Cal.App.3d 1, 7; see *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462-1463, fn. 8 ["We do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation"], disapproved on another point in *People v. Mesa* (2012) 54 Cal.4th 191, 199.)

9

"""[P]remeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.""" (*People v Felix* (2009) 172 Cal.App.4th 1618, 1626 (*Felix*).) """The true test is not the duration of time as much as it is the extent of reflection.""" (*Ibid.*)

"""The process of premeditation and deliberation does not require any extended period of time.""" (*People v. Young* (2005) 34 Cal.4th 1149, 1182.) There is no requisite minimum length of time between the prior reflection on killing a person and taking action to commit the killing. (*People v. Thomas* (1945) 25 Cal.2d 880, 900.) "'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'" (*People v. Perez* (1992) 2 Cal.4th 1117, 1127.)

D. *Analysis*

"In examining whether the evidence is sufficient to show that a defendant premeditated, a reviewing court may consider a tripartite framework—(1) planning activity, (2) motive, and (3) manner of the killing or attempt—in determining whether such intent may be inferred from the trial record." (*Felix*, *supra*, 172 Cal.App.4th at p. 1626.) These categories are "'descriptive, not normative,'" and "reflect the court's attempt 'to do no more than catalog common factors that had occurred in prior cases.'" (*People v. Young*, *supra*, 34 Cal.4th at p. 1183.) "The categories of evidence . . . do not represent an exhaustive list of evidence that could sustain a finding of premeditation and deliberation, and the reviewing court need not accord them any particular weight."

10

(*Ibid*.) While these categories are helpful for review, they are not a sine qua non to finding first degree premeditated murder, nor are they exclusive. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1081.) "However, '[w]hen the record discloses evidence in all three categories, the verdict generally will be sustained.'" (*People v. Stitely* (2005) 35 Cal.4th 514, 543.)

In essence, the fundamental inquiry is whether "the crime occurred as a result of preexisting reflection rather than a rash or unconsidered impulse." (*Felix, supra*, 172 Cal.App.4th at p. 1626.) This is generally inferred from the circumstances of the crime. (*Ramos*, *supra*, 121 Cal.App.4th at pp. 1207-1208.) Here, the circumstances of the present incident are clearly susceptible to a reasonable inference that defendant's conduct was the result of preexisting reflection as opposed to a rash unconsidered impulse.

Substantial evidence supports a conclusion that defendant had a motive for the shooting. According to Smith, he was supposed to pay defendant $40 for drugs that evening, and had not done so. Defendant told Detective Santos that Wiersma had stolen drugs from him and he suspected Smith had stolen a gun and other items from his car. Relative to planning, while the meeting at the store could be viewed as coincidental, the evidence suggests it might have been planned: defendant had armed himself with a gun and was in the company of McCallum, an individual whom defendant knew lived with Smith. Further, even if the planning did not occur before the encounter at the convenience store, it is evident by the very nature and duration of the car chase that defendant planned to shoot Smith. Lastly, the manner of the attack clearly evidenced

11

premeditation and deliberation. Defendant's vehicle pursued Wiersma's Explorer. At the time of the shooting, defendant's vehicle was positioned alongside the Explorer and slightly behind it so as to give defendant a clear shot between the front headrests. Defendant rolled down the rear window on the passenger side of the Taurus and shot with his gun protruding out the window. As Smith testified, the shots nearly hit him. And, as defendant acknowledged in his statement to Detective Santos, he tried to hit Smith because he was tired of the threats.

These facts clearly demonstrate the necessary preexisting reflection to support a finding of premeditation and deliberation.

*Felix, supra,* 172 Cal.App.4th 1618 and *Ramos, supra,* 121 Cal.App.4th 1194 are instructive. In *Felix*, the defendant had been drinking during the day. He threatened his girlfriend with death and hit her on the head with the butt of a gun, causing her to bleed. (*Felix, supra,* at p. 1622.) The mother of his girlfriend came to pick her up and take her to the hospital. The defendant believed they were going to the police and threatened to kill her again; he also threatened to kill the mother's husband. (*Ibid*.) The defendant called the husband and made serious threats of death to him and his family. Later, the husband heard the defendant's car pull up to the house. The defendant pulled out a .38-caliber handgun. The husband dropped to the floor and heard two gunshots and items breaking in the house, then heard the defendant's car drive away. (*Id*. at pp. 1622-1623.) The Court of Appeal held a reasonable jury could infer premeditation. The jury could infer planning, in that the defendant armed himself with a .38-caliber gun and drove to

12

the husband's home knowing he was there.  (*Id*. at p. 1627.)  Such is the case here; defendant was in the company of McCallum, whom he knew to be a roommate of Smith. Prior to the contact with Smith, defendant had armed himself with an assault weapon.

In *Ramos*, the defendant was at a house party when rival gang members approached the front yard of the house.  (*Ramos, supra,* 121 Cal.App.4th at p. 1198.)  As the defendant came from the backyard to the front yard to confront the rival gang members, the gang members proceeded to drive off down the street.  (*Ibid*.)  As they drove off, the defendant, among others, shot at the fleeing car, hitting it a number of times.  The Court of Appeal held there was sufficient evidence to support the finding that the attempted murders were willful, deliberate, and premeditated.  (*Id*. at p. 1208.)  The admission of gang affiliation, arming themselves before attending the party, parking around the corner so as not to be identified when they left the party, and purposely shooting at an occupied vehicle were all factors the *Ramos* court considered.  (*Ibid*.)  The court explained that "these circumstances demonstrated planning and a preconceived willingness to take immediate lethal action should the need arise."  (*Ibid*.)  "Based on these same factors, the jury . . . could conclude the attempted murder had been willful, deliberate and premeditated."  (*Ibid*.)

Here, as in *Ramos,* defendant had a motive.  In *Ramos*, it was gang affiliation; here, it was defendant suspecting Smith of stealing items from his car, coupled with the money Smith owed him.  Each defendant, by arming himself with a weapon, demonstrated planning and a preconceived willingness to take lethal action.  And, in each

13

case, the defendant, in a calculated manner, shot into a moving vehicle as the vehicle sought to evade the respective defendants.

We agree with the trial court that there is ample evidence to support a conclusion that defendant's attempted murder of Smith was premeditated and deliberate.

E. *Defendant's Argument*

Defendant relies primarily on three cases to support his argument as to the insufficiency of the evidence to support a finding of premeditation and deliberation. He cites each of these cases to support the argument that his conduct was not premeditated and deliberate, but rather unconsidered and a rash impulse hastily executed.

The first is *People v. Anderson* (1968) 70 Cal.2d 15. In that case, the defendant had been living with a woman and her three children for approximately eight months. The victim, age 10, was the youngest of the children. On the day of the murder, the defendant was highly intoxicated. While the autopsy report was not submitted into evidence, the victim appeared to have been brutalized, including a sexual attack as well as being stabbed over 60 times with cuts extending over her entire body. (*Id*. at pp. 21-22.) Relying on a three-part test that considers evidence of the defendant's conduct prior to the killing, his motive to kill, and whether the manner of killing shows a preconceived design to take life, the Supreme Court reversed the first degree murder conviction. (*Id*. at pp. 25-27, 33.) It found no reasonable evidence of planning before the murder or any motive for the defendant to kill the victim. Further, the court found the manner of the

14

killing, as brutal as it was, was inconsistent with a calculated and planned murder. (*Id*. at p. 33.)

*Anderson* is distinguishable. As previously stated, in the present matter there was ample evidence of both motive and planning. Further, the manner in which the present shooting occurred shows careful reflection by defendant in the moments before he pulled the trigger.

Defendant next relies on *People v. Rowland, supra,* 134 Cal.App.3d 1. In *Rowland*, the defendant brought a woman home from a party. The defendant later strangled her with an electrical cord and carried her body to an abandoned dirt road. (*Id*. at pp. 6-7.) The Court of Appeal held there was no evidence of motive in that the defendant did not know the victim before the encounter. As stated by the court: "It appears that he took her to his home in hopes of a sexual interlude, but such evidence fails to provide a motive for murder." (*Id*. at p. 9.) The court rejected the People's argument that the defendant took thoughtful measures to procure a weapon for use against the victim, stating: "An electrical cord . . . is a normal object to be found in a bedroom and there was no evidence presented that defendant acquired the cord at any time prior to the actual killing." (*Id*. at p. 8.) *Rowland* is distinguishable because, in the present case, there was substantial evidence of motive, as well as evidence of defendant arming himself before his encounter with Smith.

Lastly, defendant relies on *People v. Munoz* (1984) 157 Cal.App.3d 999. There, the defendant and two others were driving around; the defendant was in the backseat.

15

The defendant spotted a man walking along the street. The defendant asked the driver to pull over to ask the man for directions. As the man bent over, the defendant asked for his wallet; as the man stepped back, the defendant shot him in the chest, "'For the hell of it,'" and told the driver to drive off. (*Id*. at pp. 1004-1005.) The Court of Appeal held that the requisite solid evidence of premeditated first degree murder was lacking. (*Id*. at p. 1009.) The brief amount of time during the encounter and the defendant's senseless desire to shoot someone that night did not establish the killing was a result of careful thought and weighing of considerations. (*Id*. at p. 1010.) While the conduct in the present matter may have been equally senseless, it is clear that defendant gave his conduct thorough consideration prior to shooting out of the back passenger window.

Again, we note that "'"[t]he process of premeditation and deliberation does not require any extended period of time."'" (*People v. Young*, *supra,* 34 Cal.4th at p. 1182.) There is no requisite minimum length of time between the prior reflection on killing a person and taking action to commit the killing. (*People v. Thomas, supra,* 25 Cal. 2d at p. 900.) "'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'" (*People v. Perez, supra,* 2 Cal.4th at p. 1127.)

In conclusion, there is substantial evidence upon which a rational trier of fact could find that defendant had the requisite intent, and acted with premeditation and deliberation, in committing attempted murder as to Smith. The trial judge properly denied defendant's section 1118.1 motion for acquittal.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

McKINSTER _____

       Acting P. J.

RICHLI _____

       J.