Filed 1/29/25  P. v. Greenwood CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEWIS GREENWOOD,<br><br>    Defendant and Appellant. | B337230<br><br>(Los Angeles County<br>Super. Ct. No. PA097694) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Lewis Greenwood was convicted of the willful, deliberate, and premeditated attempted murder of Jason Akraa, after he stabbed Akraa multiple times while Akraa was working behind the counter of his family's gas station mini-mart. Greenwood's sole contention on appeal is that substantial evidence does not support the findings of premeditation and deliberation. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    *Greenwood Is Charged with Attempted Murder*

In June 2022, an information charged Greenwood with the attempted willful, deliberate, and premeditated attempted murder of Akraa. The information further alleged that Greenwood used a knife in the crime, and caused Akraa great bodily injury. Greenwood pleaded not guilty.

In February 2024, an amended information charged Greenwood with an additional count of assault with a deadly weapon.[2] The amended information also alleged that Greenwood "suffered prior convictions as an adult and sustained petitions in juvenile delinquency proceedings that are numerous and of increasing seriousness." Greenwood again pleaded not guilty. A jury trial began six days later.

---

[1] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

[2] After Greenwood was found mentally incompetent to stand trial, proceedings were suspended until he was found competent in December 2023.

## B.    *Greenwood Is Convicted of Attempted Murder*

### 1.    Testimony

Akraa was the only witness at trial.  He testified that, after his family bought a gas station in 2009, he worked there as a cashier five to six days a week.  The gas station had a mini-mart attached to it, and Greenwood was a "regular"; Akraa saw him almost daily for more than six years.  Before the incident, Akraa never had any issues with Greenwood.

On the night of the incident, Akraa was working in the mini-mart.  The gas station had more than 30 security cameras, and the prosecution introduced into evidence footage from several of them depicting the incident and Greenwood's actions before and after.[3]

At approximately 8:27 p.m., Greenwood was seen on video standing outside the mini-mart, looking in.  After two customers exited, Greenwood entered the mini-mart.  Since Greenwood was a regular customer that Akraa had known for several years and trusted, Akraa did not watch him, as he did not expect Greenwood to steal anything.  Greenwood went to the back of the store, grabbed a beer, walked toward Akraa (who stood up to handle the transaction), then returned to the back of the store to put the beer back.  Akraa watched as Greenwood—who was the only customer at the time—left the store.  Greenwood said nothing to Akraa and did not appear upset.

After Greenwood walked out, another customer entered the mini-mart.  While that customer was in the store, Greenwood

---

[3] As none of this footage was included in the appellate record, our discussions herein about what the footage depicts are summaries of Akraa's testimony regarding the footage.

was seen on video "pacing back and forth" in front of the mini-mart, "kind of scoping out the area." At one point, Greenwood looked back in the store and then started walking away. But when the customer who was in the store returned to his car, Greenwood walked back toward the mini-mart, speeding up once the other customer was fully in his car and leaving.

When Greenwood entered the store the second time—less than two minutes after he entered the first time—he was the only customer there once more. Akraa was seated behind the counter looking at his phone, watching Netflix; the footage shows that Greenwood glanced at him. Greenwood then came around the counter and swung a knife at Akraa with "his full strength and force." Akraa testified that Greenwood first stabbed at his "torso area," then at his "chest area," and then at his "head, neck area." After the knife made contact with Akraa's skull, the blade broke off.[4] Akraa was able to push an "emergency button" behind the counter and escape out the front door of the mini-mart. Greenwood left also, but headed in the opposite direction.

## 2. Closing Arguments

After Akraa testified, both parties rested. The court instructed the jury and both sides gave closing arguments.

Regarding whether Greenwood's attempt at murder was premeditated, the prosecutor pointed out that Greenwood had brought a knife to the mini-mart. He also reminded the jury that Greenwood "waited" before attacking Akraa and that he was

---

[4] The parties stipulated that the knife recovered at the scene had the DNA of "three contributors": "Greenwood at 51 percent," "Akraa at 48 percent," and "one percent of an unidentified individual."

"lurking" outside the mini-mart, looking inside to see where Akraa was. The prosecutor argued that Greenwood did not attack Akraa the first time they were alone because two customers had just exited the store, so Greenwood "knew they were going to be in the parking lot." Additionally, Akraa "was on his feet" and "ready to help him check out," so Akraa "was presumably prepared" and "in a much better position to defend himself." However, after the last customer left the mini-mart, Greenwood quickly returned and attacked because no one else was around. The prosecutor contended that these actions evidenced premeditation and deliberation.

Defense counsel argued that the evidence demonstrated only that Greenwood was guilty of assault with a deadly weapon because the People had presented no evidence of Greenwood's intent to kill. Counsel also argued that Greenwood's actions did not demonstrate premeditation or deliberation. In his rebuttal, the prosecution reiterated that Greenwood's intent to kill could be discerned from his actions of swinging the knife at Akraa's vital organs.

### 3.   Conviction and Sentencing

The jury deliberated for approximately two-and-a-half hours over the course of two days and found Greenwood guilty on both counts. The jury further found that Greenwood committed the attempted murder "willfully, deliberately, and with premeditation," that he personally used a knife, and that he personally inflicted great bodily injury upon Akraa.

The court tried the issue of whether Greenwood's prior convictions were numerous or of increasing seriousness. Based on a "certified multipage rap sheet," the court found that they were. The court sentenced Greenwood to life in prison for the

5

attempted murder and an additional four years—to be served consecutively—for the true findings that Greenwood used a knife and caused great bodily injury. The court additionally sentenced Greenwood to a total of seven years for the conviction of assault with a deadly weapon but stayed the imposition of that sentence pursuant to Penal Code section 654. Greenwood timely appealed.

## DISCUSSION

Greenwood was charged with "attempted willful, deliberate, and premeditated murder" and the jury expressly found that Greenwood committed the attempted murder "willfully, deliberately, and with premeditation." Greenwood argues that the record lacks substantial evidence to support a finding that he acted deliberately, and with premeditation. We disagree.

### A. *Governing Law*

" 'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " (*People v. Jurado* (2006) 38 Cal.4th 72, 118.) " 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)

In *People v. Anderson* (1968) 70 Cal.2d 15, our Supreme Court explained that "[t]he type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories:" (1) evidence of planning; (2) evidence regarding the defendant's motive; and (3)

6

evidence about how the murder was carried out. (*Id.* at pp. 26–27.) However, our high court later clarified that " '[t]hese factors need not be present in any particular combination to find substantial evidence of premeditation and deliberation.' " (*People v. Jurado*, *supra*, 38 Cal.4th at pp. 118–119; see also *People v. Pride* (1992) 3 Cal.4th 195, 247 ["*Anderson* does not require that these factors be present in some special combination or that they be accorded a particular weight, nor is the list exhaustive. *Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse"].)

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Jurado*, *supra*, 38 Cal.4th at p. 118.) "In conducting this analysis, we draw all reasonable inferences necessary to support the judgment." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) "Further, we must view the evidence in the light most favorable to the People, and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the properly admitted evidence." (*People v. Miller* (1990) 50 Cal.3d 954, 992.) "The standard of review is the same in cases in which the People, as here, rely primarily on circumstantial evidence." (*Ibid.*)

**B.** *Substantial Evidence Supports a Finding of Premeditation and Deliberation*

No direct evidence of Greenwood's mental state was introduced at trial, meaning the jury relied on circumstantial evidence to find premeditation and deliberation. The court instructed the jury that, before it could rely on such evidence to show intent, it needed to "be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent and mental state." The court further instructed the jury that if it could "draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent and mental state and another reasonable conclusion supports a finding that the defendant did not, [it] must conclude that the required intent and mental state was not proved by the circumstantial evidence." Because the jury found that the prosecution proved premeditation and deliberation, it necessarily concluded that was the only reasonable conclusion to be drawn.

"[T]he appellate court does not substitute its judgment for that of the jury but affirms the verdict if a rational trier of fact could find premeditation and deliberation beyond a reasonable doubt." (*People v. Pride*, *supra*, 3 Cal.4th at p. 247.) Such is the case here. While nothing in the record explains Greenwood's motivation for the attack, we hold that the evidence of planning and the manner in which he committed the attempted murder suffice to affirm the conviction.

### 1. Planning

#### (a) Bringing the Knife

Greenwood brought the murder weapon with him to the mini-mart. Our Supreme Court has held that when a defendant brings a knife to the location where he subsequently murders the victim, a jury can reasonably infer premeditation. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 ["[a]s to planning, the jury could infer that defendant carried the fatal knife into the victim's home in his pocket, which makes it 'reasonable to infer that he considered the possibility of homicide from the outset' "]; see also *People v. Hughes* (2002) 27 Cal.4th 287, 371 [because defendant brought knife to scene of murder, "a reasonable jury could infer that defendant planned and intended to commit robbery and/or sexual assault when he entered [the victim]'s dwelling, and to use his knife to facilitate the commission of those crimes, and then was motivated to kill his victim to eliminate her as a witness to those crimes"]; *People v. Miller*, *supra*, 50 Cal.3d at p. 993 [fact that defendant brought weapon with him to kill unarmed victim "reasonably suggests that he considered the possibility of murder in advance"].)

Greenwood argues that the jury could not reasonably consider his possession of the knife as proof of premeditation because the prosecution did not present evidence about how he obtained the knife, or why he had it with him. We reject this argument because the reason for possessing the knife is not part of the prosecution's burden. If Greenwood wanted to suggest that he brought a knife to the mini-mart for some other reason, then it was incumbent upon him to introduce evidence to support that theory. He did not. It was thus reasonable for the jury to infer

that Greenwood brought the knife because he intended on using it to kill Akraa.

### (b)    Choosing the Time of Attack

Video footage from the night of the incident showed that the first time Greenwood entered the mini-mart, he grabbed a beer from the back of the store and approached Akraa, who was behind the counter. Akraa testified that he was watching Greenwood, ready to help him with his purchase. Greenwood then returned to the back of the store, put the beer back, and exited the mini-mart. But Greenwood did not leave the premises. Instead, he was "pacing back and forth" in front of the mini-mart, "kind of scoping out the area" as another customer entered. When that customer returned to his car, Greenwood raced back into the mini-mart. This time, Akraa was watching Netflix on his phone and not paying attention to Greenwood, who was the only other person present in the mini-mart. Greenwood glanced at Akraa, then came around the counter and attacked.

From this evidence, a reasonable juror could have inferred that Greenwood was waiting for an opportune time to attack Akraa, such as when no other customers were around to witness the attack or to help Akraa, and when Akraa was not paying attention, rendering him more vulnerable.

Greenwood argues that his conduct was also consistent with an intent to shoplift. But a reasonable juror could have concluded that the only reasonable interpretation of Greenwood's actions was that of planning activity. As the People point out, were Greenwood's intentions to shoplift, he had many opportunities that evening to do so, given that Akraa trusted Greenwood as a regular customer. For example, when Greenwood entered the mini-mart for the second time, Akraa was

10

watching Netflix on his phone and not paying attention to him. But instead of using that opportunity to try to steal something, Greenwood used it to try to kill Akraa.

## 2. Manner of Attempted Killing

Greenwood's manner of attack also evidenced premeditation and deliberation. First, he waited until Akraa was not paying attention to him, and then swung with "full strength and force" at Akraa's head, neck, and torso areas—areas of the body housing vital organs.[5] (Cf. *People v. Koontz*, *supra*, 27 Cal.4th at p. 1082 ["firing a shot at a vital area of the body at close range, then preventing the witness from calling an ambulance" constitutes "manner of killing indicative of a deliberate intent to kill"].)

Moreover, Akraa did nothing to provoke the attack—he was watching his phone when Greenwood came around the counter to stab him. (*People v. Miller*, *supra*, 50 Cal.3d at p. 993 ["lack of provocation by the victims similarly leads to an inference that the attacks were the result of a deliberate plan rather than a 'rash explosion of violence' "].)

Greenwood's reliance on *People v. Rowland* (1982) 134 Cal.App.3d 1 is misplaced. In *Rowland*, the appellate court reduced the appellant's first degree murder conviction to second degree after finding that substantial evidence did not support the jury's finding of premeditation. (*Id.* at pp. 9–10.) Specifically, the appellate court held that the appellant's "efforts to ensure that [his companion] Williams did not learn of the victim's

---

[5] In fact, Greenwood stabbed Akraa in the head so hard that the knife blade broke off when it came into contact with Akraa's skull.

11

presence in the apartment [that he and Williams shared] . . . show[ed] only that he wished to conceal from her the fact that he had brought a strange woman home with him, a desire which is quite natural considering that Williams was defendant's live-in companion at the time"; such efforts alone were insufficient to support a finding that the appellant planned to murder the victim. (*Id.* at p. 8.) The court additionally held that the manner of killing—strangulation with an electrical cord—also did not support a finding of premeditation because an electrical cord "is a normal object to be found in a bedroom and there was no evidence presented that defendant acquired the cord at any time prior to the actual killing." (*Ibid.*) Here, by contrast, Greenwood's actions were not consistent with an intent to shoplift and there is no evidence that the murder weapon was something commonly found on Greenwood's person. On this record, substantial evidence supports the jury's finding beyond a reasonable doubt that Greenwood's attempted murder of Akraa was premeditated and deliberate.[6]

---

[6] Greenwood contends that other facts support a finding that the attempted murder was not premeditated, such as the fact that he did not try to lure Akraa out from behind the counter, or that he did not try to conceal his identity. But "[i]f the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) In other words, because the court gave the jury the circumstantial evidence instruction, the jury's verdict necessarily means that they found the only reasonable interpretation was that Greenwood acted with premeditation. On review, even if evidence would have supported a jury's finding of lack

*(Fn. is continued on the next page.)*

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

of premeditation—which the jury necessarily found to be unreasonable—so long as substantial evidence supports the jury's finding of premeditation, we must affirm.