[No. C057216. Third Dist. Sept. 10, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMON JOEL POOL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

## Counsel

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ROBIE, J.**—A jury found defendant Timon Joel Pool guilty of the first degree murder of Lillian Best and the second degree murder of Best's unborn fetus and found true a multiple-murder special-circumstance allegation. Defendant was sentenced to state prison for life without possibility of parole. On appeal, defendant argues the trial court committed reversible error by misinstructing the jury on murder of a fetus. Finding no error, we will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2006, defendant strangled his girlfriend, Lillian Best, to death. While performing an autopsy on July 24, the forensic pathologist noticed Best's uterus was noticeably larger than normal, and further investigation showed she had been pregnant. Because Best was in the early stages of pregnancy and was obese, her pregnancy was "not something obvious externally." The forensic pathologist, as well as a coroner's office pathologist who reviewed the forensic pathologist's report, both estimated the gestational age of the fetus to be about 12 weeks. Both pathologists also concluded that the fetus died as a result of the death of the mother.

Defendant claimed not to have known Best was pregnant until he was in the holding cell in court for his arraignment and received documents charging

him with two murders. Defendant testified he was "[a]bsolutely devastated" to learn he had killed his unborn child.

Defendant was charged with two counts of willfully, unlawfully, and with malice aforethought murdering Lillian Best and her fetus, respectively, with a multiple-murder special-circumstance allegation. (Pen. Code,[1] §§ 187, 190.2, subd. (a)(3).)

Prior to trial, the court agreed with the prosecutor's contention that knowledge of the existence of the fetus was not a prerequisite for finding defendant guilty of fetal murder. Later, during closing arguments, the prosecutor stressed to the jury that defendant could be found guilty of murdering the fetus on an implied malice basis even if he did not know Best was pregnant.

The court instructed the jury on murder with malice aforethought with CALCRIM No. 520.[2] The court did not include the optional "natural and probable consequences" paragraph from the standard instruction.[3]

However, the trial court gave the following special instruction for murder of a fetus: "Malice is a separate element that must be proved for each of the two murders charged. [¶] When a defendant commits an act, the natural consequences of which are dangerous to human life, with a conscious disregard for life in general, he acts with implied malice towards those he ends up killing. There is no requirement that the defendant specifically know of the existence of each victim [i.e., the fetus]."

## DISCUSSION

Defendant argues that the trial court committed reversible error by giving the prosecutor's special instruction that knowledge of the fetus's existence was not a prerequisite to a murder conviction and compounded that error by

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury was instructed that in order to prove the crime of second degree murder as to the fetus, "the People must prove that: [¶] One, the defendant committed an act that caused the death of another person or a fetus; [¶] And, two, when the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder." (CALCRIM No. 520.)

[3] The omitted paragraph instructs as follows: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence." (CALCRIM No. 520.)

omitting from the jury instructions the "natural and probable consequences" paragraph. We find no error.

# I

*Knowledge of Existence of the Fetus Is Not a Prerequisite to Fetal Murder*

Defendant first contends the special jury instruction "that knowledge of the existence of the fetus was not a prerequisite for finding [defendant] guilty of fetal murder" was erroneous. Defendant notes that "[a]lthough neither the court nor the prosecutor expressly referred to *People v. Taylor* (2004) 32 Cal.4th 863 [11 Cal.Rptr.3d 510, 86 P.3d 881] (*Taylor*), that case was the unquestionable basis for the prosecutor's instruction." Defendant "submits, however, that the holding in *Taylor* should be narrowly construed and should not have applied to the circumstances in [defendant's] case" in which the victim was strangled rather than shot. We see no reason to distinguish *Taylor*.

The facts in *Taylor* are remarkably similar to the facts here. In *Taylor*, the defendant engaged in a physical struggle with his ex-girlfriend, eventually shooting her in the head and killing her. (*Taylor, supra*, 32 Cal.4th at pp. 863, 866.) She died of a single gunshot wound to the head. (*Id.* at p. 866.) The autopsy revealed she was pregnant, and the fetus was between 11 and 13 weeks old. (*Ibid.*) The examining pathologist could not discern that the victim, who weighed approximately 200 pounds, was pregnant just by observing her on the examination table. (*Ibid.*) The prosecution proceeded on a theory of second degree implied malice murder as to the fetus, and the defendant was convicted of two counts of second degree murder. (*Id.* at pp. 866–867.) Noting that the " '[defendant] did not know [the victim] was pregnant,' " Division Four of the First District Court of Appeal reversed the conviction for fetal murder. Specifically, the court asked, " '[w]here is the evidence that [defendant] acted with knowledge of the danger to, and conscious disregard for, fetal life?' " and answered " '[t]here is none. This is dispositive.' " (*Id.* at p. 867.)

■ Our Supreme Court reversed the judgment of the Court of Appeal, holding that "[w]hen a defendant commits an act, the natural consequences of which are dangerous to human life, with a conscious disregard for life in general, he acts with implied malice towards those he ends up killing. There is no requirement the defendant specifically know of the existence of each victim." (*Taylor, supra*, 32 Cal.4th at p. 868.) "[B]y engaging in the conduct he did, defendant demonstrated a conscious disregard for all life, fetal or otherwise, and hence is liable for all deaths caused by his conduct." (*Id.* at p. 870.)

Defendant asks us to distinguish the holding in *Taylor*, arguing that "the differences between *Taylor* . . . and [defendant's] case should be obvious." Defendant argues that in *Taylor* "the Supreme Court arrived at its holding by focusing on the defendant's act of firing two bullets at the victim during the assault, specifically concluding that in shooting [his victim] the defendant acted with conscious disregard for life in general." Defendant then argues that "[a] reasonable person should know that when he fires a gun at an intended target he runs the risk of killing another person with a stray bullet [and] [i]t is undisputable that firing a weapon is an inherently reckless act dangerous to all those around . . . irrespective of whether he is aware of their presence."

"By contrast," in defendant's view, "a reasonable person with no knowledge, or even suspicion, that his victim is pregnant, should not be expected to know that strangling the victim might result in the death of another victim. Unlike discharging a weapon, or driving a car while drunk [as in *People v. Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279]], both of which are potentially lethal to anyone who gets in the way, the act of strangling a person is not inherently dangerous to anyone other than the person being strangled. . . . [S]trangling an intended victim indicates only a conscious disregard for that life *in particular*."[4]

We are unpersuaded by defendant's arguments. We find no basis in law or reason for distinguishing between murdering a pregnant woman by gunshot or by strangulation. Our Supreme Court in *Taylor* could hardly have been more clear: "In battering and shooting [the victim], defendant acted with knowledge of the danger to and conscious disregard for life in general. That is all that is required for implied malice murder. He did not need to be specifically aware how many potential victims his conscious disregard for life endangered." (*Taylor, supra*, 32 Cal.4th at p. 869.) Here, in strangling Best, defendant likewise acted with knowledge of the danger to and conscious disregard for life.

Finally, in trying to distinguish *Taylor*, defendant asks us to consider an earlier California Supreme Court case, *People v. Roberts* (1992) 2 Cal.4th 271 [6 Cal.Rptr.2d 276, 826 P.2d 274], to further support his contentions. In *Roberts*, the defendant, a prison inmate, stabbed another inmate, Gardner, 11 times, after which Gardner grabbed the knife off the floor, staggered some distance up a flight of stairs, and stabbed a prison guard in the chest. (*Id.* at pp. 294–295.) Both Gardner and the guard eventually died from their wounds. (*Id.* at p. 295.) The prosecution presented expert testimony that the

---

[4] Defendant also asks us to consider Justice Kennard's dissenting opinion in *Taylor* (*Taylor, supra*, 32 Cal.4th at p. 871 (dis. opn. of Kennard, J.)) but concedes it lacks "precedential value."

sudden loss of blood to Gardner caused him to go into shock and unconsciously stab the guard. (*Id.* at p. 296.) The defendant was convicted of the first degree murders of Gardner and the guard. (*Id.* at p. 294.) In instructing the jury on the proximate cause of death, the trial court told the jury that it was "immaterial that the defendant could not reasonably have foreseen the harmful result" to the prison guard when he stabbed Gardner. (*Id.* at p. 315, italics omitted.) In reversing the defendant's conviction, the Supreme Court noted that "implied malice may be found when a defendant, knowing that his or her conduct endangers life and acting with conscious disregard of the danger, commits an act the natural consequences of which are dangerous to life." (*Id.* at pp. 271, 317.) The court then observed that "[a] result cannot be the natural and probable cause of an act if the act was unforeseeable." (*Id.* at pp. 321–322.) Defendant argues that because the death of a fetus whose existence is unknown is not the natural and probable consequence of a strangling, "[t]he effect of the prosecutor's special instruction in this case was analogous to the improper instruction given in *Roberts*" because "the court effectively told the jury that, as in *Roberts*, it was 'immaterial that the defendant could not reasonably have foreseen the harmful result' to the fetus."

We think the facts here are readily distinguishable from those in *Roberts*. Here, there was expert testimony that the defendant directly caused the fetus's death when he killed Best. Defendant does not dispute this fact. In *Roberts*, however, the court noted there was an issue as to whether the defendant was an indirect, and likely unforeseeable, cause of the guard's death, which the jury never considered. (*People v. Roberts, supra,* 2 Cal.4th at pp. 321–322.) The *Roberts* court found that "[a]n instruction that told the jury to disregard foreseeability would inevitably lead it to ignore the nature of Gardner's response to defendant's attack, and hence would substantially distract the jury from considering the causation element of the offense—an element that was very much at issue in the case." (*Id.* at p. 322.) In other words, the *Roberts* court found that the trial court had incorrectly stated the law of proximate cause by expressly instructing the jury not to consider whether Gardner's unconscious response to being stabbed (i.e., stabbing the prison guard) was foreseeable. We are faced with no such "chain of causation" question here. On the facts before us, *Taylor*, decided 12 years after *Roberts* and with facts nearly identical to those here, is controlling. Accordingly, the trial court did not err in giving the special instruction.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 904.

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167237.