Filed 9/9/25  P. v. Chavez Ramirez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BENITO CHAVEZ RAMIREZ,<br><br>    Defendant and Appellant. | B332137<br><br>(Los Angeles County<br>Super. Ct. No. BA491566) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Lauren Sanchez, Deputy Attorney General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Benito Chavez Ramirez appeals from the judgment after a jury convicted him of second degree murder (Pen. Code, § 187, subd. (a)).[1]  The trial court sentenced Chavez to a prison term of 15 years to life.  Chavez argues substantial evidence did not support the jury's finding of malice.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Law Enforcement Officers Discover a Body*

On November 17, 2018, at approximately 6:00 a.m., police received a report of a body in the middle of a residential street.  A nearby police officer responded and found the body of a woman later identified as Catrina Johnson.

Johnson's shirt and bra were pushed above her breasts; she was otherwise unclothed.  There was one sandal near Johnson's feet.  She had contusions and abrasions on her forehead, face, right hand, back, and both knees.  The whites of her eyes showed petechiae from oxygen deprivation,[2] and there was foam around her mouth.  Two of Johnson's fingernails were torn off and bleeding; several of her acrylic nails were broken or missing.  Rigor mortis, the stiffening of muscles after one dies, was present throughout her body.  Lividity, the settlement of blood after one

---

[1]     Statutory references are to the Penal Code.

[2]     Petechiae are small hemorrhages.  (*Chatterjee v. Kizer* (1991) 231 Cal.App.3d 1348, 1354.)  "[T]he presence of petechiae [is] indicative of strangulation."  (*People v. Cody* (2023) 92 Cal.App.5th 87, 95.)

dies, was observed on her back, appearing "dark [and] blanched with pressure." A medical examiner determined Johnson died from asphyxia due to neck compression.

B. *The Sheriff's Department Investigates*

The Los Angeles County Sheriff's Department handled the investigation. Detectives from the Sheriff's Department interviewed Charde Richardson, a close friend of Johnson, who was with Johnson the morning she died. Richardson said she and Johnson were street sex workers and had worked early in the morning of November 17, 2018. Richardson remembered seeing a white truck pull up to Johnson at a street corner. Johnson approached the truck, spoke briefly with the driver, and got into the front passenger seat after the driver grabbed her breast. Detectives obtained surveillance footage from a nearby tire shop that confirmed Richardson's description of the encounter.

When Johnson did not return, Richardson sent her a text message, "You straight bro?" Johnson received a reply, "Yes. Coming back now. I had to get condoms." Richardson found the message odd because they had purchased condoms earlier that night and Johnson had them when she got into the white truck. Richardson's subsequent texts to Johnson were not delivered.

The Sheriff's Department obtained surveillance footage from a residence near where the officer found Johnson's body. The video showed that at 5:48 a.m. a white truck was traveling near where police found Johnson's body and moving slowly down the street with the truck's headlights off and passenger door open.

C.     *Detectives Identify Chavez as a Suspect*

Using cellular data from towers near the intersection where Johnson got into the truck and the area where Johnson's body was found, detectives identified Chavez as a suspect. Chavez's cellphone records and timeline location history, which investigators obtained pursuant to search warrants, revealed the location and movement of his phone on the morning of Johnson's death. After Johnson got into the white truck, Chavez's phone traveled a few blocks, and then remained stationary from 3:10 a.m. to 3:51 a.m. Chavez's phone then moved toward the intersection of the 110 and 105 freeways in Los Angeles. Additional data showed Chavez's phone moving between 5:45 a.m. and 5:50 a.m., very close to the area where Johnson's body was discovered.

On November 21, 2018 a state highway transportation worker found Johnson's cellphone and two $100 bills near the intersection of the 110 and 105 freeways. Johnson's phone last registered data at 3:59 a.m. from near the intersection of the 110 and 105 freeways.

Investigators also obtained information about Chavez's internet search history on his phone. Between November 17, 2018 and November 19, 2018 Chavez searched several times for "body found" and "body located."

D.     *Chavez Eventually Admits He Strangled Johnson*

Sheriff's deputies arrested Chavez in November 2020 for Johnson's murder. In his first interview Chavez said he had "never seen" Johnson and knew nothing about the incident.

In a separate conversation with two undercover deputies Chavez said he picked a woman up after a party, began kissing

4

her, and tried to have sex with her in his truck. When the woman refused and began hitting him, Chavez grabbed her by the neck and later used his legs to kick her out of the truck. Chavez alleged the woman "got up" after he pushed her out of his truck.

In his second interview Chavez admitted he recognized Johnson. He claimed that he picked her up in his white truck and paid her $200 to have sex with him, but that she demanded more money. Chavez claimed that, after he rejected her demand, Johnson saw cash in his wallet and threatened him with a pocketknife. Chavez said he "squeez[ed] her neck, and when [he] saw her hand going down, weak, that's when [he] just tossed her out [of his truck] like that." Chavez first claimed that Johnson "wasn't that awake" when he pushed her out of his truck, but later claimed that she "was conscious . . . [and] talked" to Chavez when he pushed her out of his truck.

A senior criminalist with the Sheriff's Department determined Chavez's DNA was a likely contributor to DNA found on the sandal near Johnson's feet, in bloodstains on her body, on her breasts, and on her right hand fingernail. The criminalist found no DNA from Chavez in Johnson's genital area or on her neck.

E.    *A Jury Convicts Chavez of Second Degree Murder*

In 2023 a jury convicted Chavez of the second degree murder of Johnson. The court sentenced Chavez to prison for 15 years to life. Chavez timely appealed.

## DISCUSSION

Chavez contends substantial evidence did not support the jury's finding he acted with malice. But it did.

### A.    *Applicable Law and Standard of Review*

Murder is the unlawful killing of a human being "with malice aforethought." (§ 187, subd. (a).) Second degree murder is "'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.'" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953; see *People v. Knoller* (2007) 41 Cal.4th 139, 151.)

Malice may be express or implied. (§ 188, subd. (a).) It is express "when there is manifested a deliberate intention" to kill. (§ 188, subd. (a); see *People v. Nguyen* (2024) 103 Cal.App.5th 668, 679 ["'Malice is express when there is manifested a deliberate intention to unlawfully take away the life of *a* fellow creature'"].) Malice is implied when "'the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"'" (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) To determine whether substantial evidence supported a second degree murder conviction based on implied malice, the reviewing court must assess whether there was sufficient evidence of both the physical and mental components of implied malice. (See *People v. Cravens* (2012) 53 Cal.4th 500, 508 (*Cravens*); *People v. Palomar* (2020) 44 Cal.App.5th 969, 976.)

6

"[O]n appeal, the reviewing court applies the substantial evidence standard to the superior court's findings. [Citation.] Under this familiar standard, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"" (*People v. Vargas, supra*, 84 Cal.App.5th at p. 951; see *Cravens, supra*, 53 Cal.4th at p. 507.) A "reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citations.] Substantial evidence also "'includes circumstantial evidence and any reasonable inferences drawn from that evidence.'"" (*Vargas*, at p. 951.) We will affirm the judgment "'unless it appears "that upon no hypothesis whatsoever is there substantial evidence to support [it].'"" (*Cravens*, at p. 508.)

B.    *Substantial Evidence Supported the Jury's Finding of Implied Malice*

Strangulation, particularly when prolonged, is inherently dangerous to life. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1019-1020; *People v. Davis* (1995) 10 Cal.4th 463, 510; *People v. Shamblin* (2015) 236 Cal.App.4th 1, 11.) Johnson died of asphyxia caused by neck compression that restricted blood flow to her brain. The medical examiner testified that unconsciousness typically occurs within 30 to 60 seconds of manual strangulation, while death requires consistent pressure for five to 10 minutes. (See *People v. Gobert* (2023) 89 Cal.App.5th 676, 680 ["death by strangulation takes time—about four to five minutes"].) Thus, the jury reasonably could have found Chavez maintained

7

pressure on Johnson's neck for at least five minutes—long enough to endanger her life and, in this case, to cause her death. There was substantial evidence of the physical component of implied malice.

There was also substantial evidence Chavez acted with the requisite mental state. A "finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (*People v. Watson* (1981) 30 Cal.3d 290, 296-297; see *In re Ferrell* (2023) 14 Cal.5th 593, 604.) Medical evidence and testimony indicated Chavez continued strangling Johnson for at least five minutes after she lost consciousness. By that point, she no longer posed a threat— yet, Chavez persisted. This prolonged use of force, well beyond any plausible justification, supported the jury's finding Chavez consciously disregarded the danger his actions posed. (See *People v. Hovarter*, *supra*, 44 Cal.4th at p. 1020 ["prolonged manner of taking a person's life, which requires an offender to apply constant force to the neck of the victim, affords ample time for the offender to consider the nature of his deadly act"]; *People v. Gobert*, *supra*, 89 Cal.App.5th at p. 685 [medical testimony "a person being strangled will lose consciousness after about a minute but not experience irreversible brain damage and imminent death until 'the four-to-five minute mark'" supported a finding of malice]; *People v. Shamblin*, *supra*, 236 Cal.App.4th at p. 11 ["[b]ecause the evidence supports a finding that the defendant applied significant force to the victim's neck for a significant period of time, a reasonable juror could infer that his actions were not the result of accident, mistake, or uncertainty of purpose"]; *Shackleford v. Hubbard* (9th Cir. 2000) 234 F.3d 1072, 1079 ["'One ordinarily cannot strangle and garrote someone and

*listen to their labored breathing for ten minutes as they expire* without appreciating that the conduct is life threatening.'"].)

There were other indicia of malice. "Among the circumstances courts have found relevant in determining whether malice may be inferred are the victim's vulnerability, the number of assailants, the ferocity and duration of the attack, and the unusualness or unexpectedness of the victim's death." (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 502.) Johnson was undeniably vulnerable: She was alone with Chavez in his truck, under his control, and (according to Chavez) subdued with one hand. Chavez acknowledged he had "more strength against her." Police found Johnson wearing only a bra and shirt that had been pushed up to her neck, with no pants or undergarments, further confirming her vulnerability and suggesting the attack was sudden and unexpected. And the attack was violent: Johnson had burst eye capillaries from oxygen deprivation consistent with prolonged strangulation. Her index and ring fingernails were ripped off and bleeding, and some of her acrylic nails were broken or missing. She had extensive abrasions consistent with being pushed from a vehicle.

Chavez's conduct after killing Johnson—dumping her body, discarding her phone, searching "body found," and denying any involvement—further supported the jury's finding of implied malice. (See *Cravens, supra,* 53 Cal.4th at p. 511 ["defendant's behavior before and after the fight further . . . bolstered the finding of implied malice"]; *People v. Carr* (2023) 90 Cal.App.5th 136, 139 ["implied malice may be inferred from a defendant's conduct before, during, and after" the killing].) The evidence of Johnson's vulnerability, the sustained and brutal nature of the

attack, Chavez's post-killing conduct, and his admissions amply supported the jury's finding he acted with implied malice.

Chavez argues that he strangled Johnson only for "a minute," that he intended only to render her unconscious, and that she was still alive when he pushed her out of his truck. But the jury did not have to believe Chavez's chronology or version of events, which conflicted with the medical examiner's testimony that death by manual strangulation takes five to 10 minutes. (See *Cravens*, *supra*, 53 Cal.4th at p. 510 [jury is "not compelled to credit the defense version" of events].) The jury was entitled to rely on the medical examiner's testimony and conclude that Chavez did not briefly choke Johnson, as he said he did, but that he strangled her to death.

Citing the medical examiner's inability to quantify the precise force or duration needed to kill by manual strangulation, Chavez argues a "medically untrained youthful immigrant construction worker might be ignorant of the probability that his act would result in [Johnson's] death." But one need not be a medical expert (or hear testimony from one) to recognize choking someone unconscious and maintaining that pressure for several minutes endangers the life of another. (See *People v. La Vergne* (1966) 64 Cal.2d 265, 272 ["homicide by strangulation indicates malice"]; *People v. Pool* (2008) 166 Cal.App.4th 904, 908 [defendant who strangled his victim "acted with knowledge of the danger to and conscious disregard for life"]; see also *People v. Rowland* (1982) 134 Cal.App.3d 1, 9 [evidence of strangulation "is a means of establishing malice aforethought"].)

Chavez points to the absence of internal trauma to Johnson's neck as evidence he did not recognize the danger of his actions. But as the medical examiner explained, manual

10

strangulation does not always cause internal trauma; its absence can result from a range of variables—such as the manner in which force is applied, the positioning of the victim, and the circumstances of the struggle.  Thus, the lack of visible neck trauma did not undermine the jury's finding that Chavez's prolonged strangulation was lethal or that Chavez was aware of the risk his actions posed to Johnson's life.  His admissions confirm his awareness:  He said he strangled Johnson until she was unconscious and then discarded her body.  Chavez's conduct demonstrated not only that he recognized the risk, but that he understood and accepted the likely fatal outcome.

## DISPOSITION

The judgment is affirmed.


SEGAL, Acting P. J.

We concur:



FEUER, J.



STONE, J.


11